**John CRUMP, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 29A04–9912–CR–572.**

Court of Appeals of Indiana.

Dec. 15, 2000.

Transfer Denied March 9, 2001.

David M. Adams, Noblesville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant, John Crump (Crump), appeals the revocation of his probation and revocation of his placement with Hamilton County Community Corrections (Community Corrections). Crump also appeals the trial court ordering him to serve his suspended sentence.

We affirm.

### ISSUES

Crump raises four issues on appeal, which we restate as follows:

1. Whether the trial court erred in revoking Crump's probation.

2. Whether the trial court erred in permitting the State to amend its Information of Violation of Probation.

3. Whether the trial court erred in finding that Crump violated his placement with Community Corrections.

4. Whether the trial court erred in sentencing Crump.

### FACTS AND PROCEDURAL HISTORY

On October 17, 1996, Crump was charged with forgery, a Class C felony, theft, a Class D felony, and false reporting or informing, a Class B misdemeanor. On April 23, 1998, a guilty plea hearing was held and a plea agreement was tendered to the trial court. The agreement called for Crump to plead guilty to forgery, a Class C felony, and sentencing would be at the discretion of the trial court with the provision that Crump not receive an executed sentence greater than five years.

On December 31, 1998, the trial court sentenced Crump to eight years at the Indiana Department of Correction, two years executed on a work release as supervised by Community Corrections, and five years probation. In addition to any terms and conditions of probation, the trial court required Crump to serve one year of electronically monitored home detention as supervised by Community Corrections. Moreover, Crump was not to possess, transport, consume or be near alcoholic beverages, or be found in any business establishment where alcoholic beverages are the primary product for sale.

Because bed space at the Community Corrections facility was subject to a wait-

ing list, Crump was initially placed on home detention from January 6 through February 7, 1999. On February 7, 1999, Crump began his work release program at Community Corrections. Crump entered into a work release contract that stipulated: "I will not consume anything containing alcohol." (R. 189).

On March 27, 1999, Crump returned to the Community Corrections facility from his employment. A standard procedure was for an individual to be patted down prior to entering their cell block. Crump walked directly to the cell block, and one of the correction officers followed him and asked him to step out. Upon doing so, the officer noticed an odor of alcohol from Crump's breath. At that point, the officer ordered Crump to an interview room. The officer questioned him, and Crump eventually admitted to consuming two beers. Crump submitted to a urine screen and then he was taken to the Hamilton County Jail where the assistant director of Community Corrections administered a breathalyzer test. The BAC Datamaster showed that Crump had a .16 blood alcohol content.

On March 31, 1999, Community Corrections held an administrative hearing with regard to the allegations against Crump. Crump was given a copy of the noncompliance report and a copy of a participant's rights form. At the hearing, Crump admitted that he had been drinking on March 27, 1999. As a result of his .16 blood alcohol content and his admission to drinking, Community Corrections filed a notice of noncompliance with the trial court on April 1, 1999. The following day, Community Corrections terminated Crump from the work release program.

On April 1, 1999, the State filed an Information of Violation of Probation in the trial court. The Information stated that Crump violated condition 17 of his probation. Condition 17 states that "**YOU SHALL** ... Successfully complete any direct commitment through Hamilton County Community Corrections." (R. 165) (em-

phasis in original). A fact-finding hearing was set and held on July 8, 1999.

On July 9, 1999, Crump filed a motion to dismiss the Information because condition 17 was not a condition of his probation. On July 12, 1999, the State filed an (Addendum) Information of Violation of Probation which stated that Crump violated condition 14 of his probation. Condition 14 states that "**YOU SHALL** ... Not consume alcoholic beverages or shall not enter into any establishment where alcoholic beverages are the primary product for sale." (R. 165) (emphasis in original). On July 22, 1999, the trial court granted Crump's motion to dismiss and found that the Addendum was properly filed and at issue before the court.

On August 26, 1999, the trial court held a fact-finding hearing on Crump's violation of probation and the issues raised in the Community Corrections non-compliance report. The trial court found that Crump had violated the conditions of the Community Corrections work release contract and the terms of his probation by drinking alcohol. The trial court held a dispositional hearing on September 7, 1999, and revoked Crump's probation and work release and ordered him to serve eight years at the Indiana Department of Correction, executed. Crump now appeals.

## DISCUSSION AND DECISION

### I. *Violation of Probation*

■ Crump argues that the trial court erred in revoking his probation. He claims that he was not on probation on the date that the violation of probation occurred. From January 6 through February 7, 1999, Crump was on home detention while he was waiting for bed space to open up at the Community Corrections facility. During this time, Crump states that he was on probation. He met with his probation officer, and followed other general terms of probation. However, it is Crump's contention that his initial period of probation expired when he entered the work release

program on February 7, 1999. Therefore, Crump claims that when he entered the work release program, he was serving his sentence and, thus, not on probation.

Ind.Code § 35–38–2–3(a)(1) states: "[t]he court may revoke a person's probation if: ... the person has violated a condition of probation during the probationary period." In *Ashley v. State*, 717 N.E.2d 927, 928 (Ind.Ct.App.1999), *reh'g denied*, this court held that the probationary period begins immediately after sentencing and ends at the conclusion of the probationary phases of the defendant's sentence. Furthermore, in *Gardner v. State*, 678 N.E.2d 398, 400–401 (Ind.Ct.App.1997), this court held that:

> In *Ashba v. State* [(1991) Ind.App., 570 N.E.2d 937] ..., we held that a defendant who was on parole from the Indiana Department of Correction, but not yet on probation, can violate his probation prospectively. The court noted that I.C. 35–38–2–3(g) allows the court to revoke probation if it finds that the defendant violated "a condition at any time before termination of the [probationary] period." *Ashba* interpreted the language to permit "the trial court to terminate probation before a defendant has completed serving his sentence or to revoke probation before the defendant enters the probationary phases of his sentence." [citation omitted]
>
> As this court has said countless times, the granting of a conditional liberty is a favor and not a right. [citation omitted]. When a trial court grants a defendant probation in lieu of an executed sentence, the trial court is taking many aspects of the defendant's character into account. When the defendant commits a crime or violates a term of the probation, the trial court should be able to weigh that violation in its reevaluation of whether the defendant should be or should have been granted probation. ... Once a defendant has been sentenced, the court may revoke or modify probation, upon a proper showing of a

violation, at any time before the completion of the probationary period.

■ Condition 14 of Crump's probation states: "**YOU SHALL** ... Not consume alcoholic beverages or shall not enter into any establishment where alcoholic beverages are the primary product for sale." (R. 165). It was found that Crump had consumed alcohol. Crump was serving his executed sentence of two years on work release at the Community Corrections facility and was not yet on probation when he consumed the alcohol. However, Crump was in his probationary period. Although Crump's actual probation had not yet begun, a defendant's "probationary period" begins immediately after sentencing. *See Ashley*, 717 N.E.2d at 928. The violation occurred after Crump was sentenced but before the conclusion of the probationary phases of his sentence. *See id.* Thus, Crump was in his probationary period. As previously stated, "[o]nce a defendant has been sentenced, the court may revoke or modify probation, upon a proper showing of a violation, at any time before the completion of the probationary period." *Gardner*, 678 N.E.2d at 401.

■ Finally, Crump argues that the trial court erred in not providing a written statement as to the evidence relied on and the reasons for revoking probation. In *Hubbard v. State*, 683 N.E.2d 618, 620–621 (Ind.Ct.App.1997), this court held the following:

> Due process requires a written statement by the fact finder regarding the evidence relied upon and the reasons for revoking probation. This requirement is a procedural device aimed at promoting accurate fact finding and ensuring the accurate review of revocation decisions. We have held that placing the transcript of the evidentiary hearing in the record, although not the preferred way of fulfilling the writing requirement, is sufficient if it contains a clear state-

ment of the trial court's reasons for revoking probation.

*Id.* (citations omitted).

A transcript of the fact-finding hearing as well as the Order of August 26, 1999, are in the record. At the hearing, the trial court heard witness testimony and was presented evidence to show that Crump violated a condition of his probation. The trial court held that "[b]ased on the evidence that I've heard here today, the Court does find that the Defendant by his consumption of alcohol has violated the conditions of Community Corrections and has also violated the terms of his probation." (R. 438–439). The written Order of August 26, 1999, states the following:

> Evidence received. The defendant is found to have violated conditions number 14 of his/her probation as set forth in the Information and condition 14C [sic] his community corrections placement as set forth in the Notice of Non Compliance with Community Corrections Placement, and upon said evidence the Court finds that the defendant has in fact violated his/her probation and his/her community corrections placement.

(R. 267). Although not the preferred way of fulfilling the writing requirement, we find that the trial court adequately made Crump aware that the witness testimony and evidence presented established by a preponderance of the evidence that Crump consumed alcohol and violated his probation. Consequently, we find that the trial court did not err in revoking Crump's probation.

## II. *Amended Information*

■ Crump also argues that the trial court erred in allowing the State to amend the Information for Violation of Probation. Crump relies on Ind.Code § 35–38–2–3(a)(2)(B) which states the following:

> (a) The court may revoke a person's probation if:

* * *

> (2) the petition to revoke probation is filed during the probationary period or before the earlier of the following:

* * *

> (B) Forty-five (45) days after the state receives notice of the violation.

The original Information of Violation of Probation, filed on April 1, 1999, makes reference to the incident that occurred on March 27, 1999. Crump maintains that his initial period of probation was terminated when he started the work release program on February 7, 1999. Forty-five days following that date was May 11, 1999. The State filed its Addendum on July 12, 1999. It is Crump's contention that the Addendum completely changed the basis of the alleged violation by referencing condition 14 instead of condition 17. Consequently, Crump argues that it is beyond the intent of the above statute, along with the requirements of due process and basic fairness, to permit the State to file an Information and then amend the same outside the permitted time period to a point where the entire basis of the alleged violation is changed.

We find that Crump's reliance on Ind. Code § 35–38–2–3(a)(2)(B) is misplaced. "The forty-five day requirement set forth in Ind.Code § 35–38–2–3(a)(2)(B) 'applies only if a defendant's probation has ended and the State has notice that the defendant violated his probation.'" *Ashley,* 717 N.E.2d at 929 (quoting *Louth v. State,* 705 N.E.2d 1053, 1058 (Ind.Ct.App.1999), *reh'g denied*). Crump was in his probationary period when he violated a condition of his probation and when the State filed its Addendum. Thus, Crump's reliance on Ind. Code § 35–38–2–3(a)(2)(B) is not applicable to this case.

■ Furthermore, we find that the trial court could have found its authority to allow the State's Addendum and to revoke Crump's probation in Ind.Code § 35–38–2–3(a)(1). This section states as follows:

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

Crump was in his probationary period at the time he consumed alcohol and, thus, violated a condition of his probation. The State filed its Addendum while Crump was in his probationary period. Therefore, we find that the trial court properly allowed the State to amend the Information for Violation of Probation.

### III. *Placement with Community Corrections*

■■ Crump argues that the trial court erred in finding that he violated his work release contract with Community Corrections.

First, Crump maintains that he was not given a fair hearing at the trial court level because of the administrative hearing held by Community Corrections. Specifically, Crump contends that his Fifth and Sixth Amendment rights were violated. We disagree.

In *Million v. State*, 646 N.E.2d 998, 1001–1002 (Ind.Ct.App.1995), this court held:

We reiterate that placement in a community corrections program is an alternative to commitment to the Department of Correction and made at the sole discretion of the trial court. Therefore, a defendant is not entitled to serve his sentence in a community corrections program but, as with probation, placement in the program is a "matter of grace" and a "conditional liberty that is a favor, not a right."

*Id.* (citations omitted).

In *Decker v. State*, 704 N.E.2d 1101, 1103–1104 (Ind.Ct.App.1999), this court held:

When a trial court conducts a probation revocation hearing, that hearing is civil in nature, and the crime must be proven only by a preponderance of the evidence.

There is no corresponding provision in the community corrections statutes. However, a hearing is required before the revocation of placement in the community corrections program and before his placement is revoked, "[a] defendant in community corrections is entitled to written notice of the claimed violation of the terms of his placement, disclosure of the evidence against him, an opportunity to be heard and present evidence and the right to confront and cross-examine adverse witnesses in a neutral hearing before the trial court." *Million [v. State*, 646 N.E.2d 998, 1003 (Ind.Ct.App. 1995) ]. Therefore, as in the probation context, we hold that a community corrections revocation hearing is civil in nature, and in order to revoke Decker's placement, the State need only prove that the revocation was warranted by a preponderance of the evidence.

*Id.* (citations omitted).

On August 26, 1999, the trial court held a fact-finding hearing on Crump's violation of probation and the issues raised in the Community Corrections non-compliance report. Before the hearing, Crump was given a copy of the noncompliance report. At the hearing, the trial court heard testimony from Correctional Officer David Vice. Officer Vice testified that on March 27, 1999, Crump had an odor of alcohol on his breath. Also at the hearing, the State submitted and the trial court accepted into evidence the result of the breathalyzer test that showed Crump had a blood alcohol content of .16.

Crump's violation of probation and his work release contract stem from the incident that occurred on March 27, 1999. As a condition of probation and of his work release contract, Crump was not allowed to consume any alcohol. On March 27, 1999, it was found that Crump had consumed alcohol, violating a condition of probation and his work release contract. On August 26, 1999, at a neutral hearing before the trial court, Crump was represented by counsel; he had an opportunity to be

heard and present evidence; he also confronted and cross-examined adverse witnesses. *See Id.* at 1104.

 Crump argues that he was not allowed counsel at the administrative hearing held by Community Corrections where he made certain incriminating statements. The Sixth Amendment right to counsel attaches only in criminal prosecutions, there is no such right in an administrative action. *Davis v. State,* 174 Ind.App. 433, 367 N.E.2d 1163, 1166 (1977). The hearing held by Community Corrections was administrative. Thus, Crump's Sixth Amendment right to counsel had not attached. Furthermore, the Fifth Amendment right against self-incrimination does not apply to the obtaining of noncommunicative physical evidence. *Davis,* 367 N.E.2d at 1167. The privilege against self-incrimination is not violated by breathalyzer tests. *Smith v. State,* 496 N.E.2d 778, 784 (Ind.Ct.App.1986). The odor of alcohol on Crump's breath and the result of the breathalyzer test was noncommunicative physical evidence. This evidence was enough to establish by a preponderance of the evidence that Crump had consumed alcohol and, thus, violated a condition of his probation and work release contract.

For the aforementioned reasons, we find that Crump's Fifth and Sixth Amendment rights were not violated.

Next, Crump argues that his work release contract is illegal in the following ways: 1) it permits Community Corrections to terminate participation in the program; 2) it violates the Fourth Amendment of the United States Constitution; and 3) it permits Community Corrections to remove earned credit time. Crump claims that because the work release contract is contrary to the law in three areas the entire contract is void. We disagree.

 Paragraph 11 of the work release contract states that "Hamilton County Community Corrections can terminate my participation in this program without no-

tice, if I have any violations of the above conditions." (R. 189). Crump claims that this portion of the contract violates Ind. Code § 35–38–2.6–5. Ind.Code § 35–38–2.6–5 states: "If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following: ... Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence." On August 26, 1999, the trial court found that Crump violated conditions of his placement in Community Corrections and his probation. Because Crump had violated conditions of his placement in Community Corrections and his probation, the trial court revoked both and committed him to the Indiana Department of Correction. Even if Community Corrections initially revoked Crump's placement in its facility, the final decision to revoke Crump's placement was made by the trial court in accordance with Ind.Code § 35–38–2.6–5.

 Crump also claims that paragraph 13 of the work release contract is essentially a waiver of his Fourth Amendment protection against unreasonable search and seizure. Paragraph 13 states: "I agree to allow Hamilton County Community Corrections staff to make reasonable inquiries into my activities and shall submit to the search of my person and property, including motor vehicle, at any time." (R. 189). Crump cites to *Green v. State,* 719 N.E.2d 426 (Ind.Ct.App.1999). In *Green,* Green signed an agreement in conjunction with his work release program wherein he agreed to waive his "4th Amendment right with regard to a search and seizure by any law enforcement officer." *Id.* at 429. The *Green* court held that a condition of work release that purports to require a participant to submit to a search or seizure without reasonable suspicion is overly broad. *Id.* at 430.

 The language in paragraph 13 of Crump's work release contract does not require him to waive his Fourth Amend-

ment protections as did the agreement in *Green.* Furthermore, in *Cohn v. Strawhorn,* 721 N.E.2d 342, 350 (Ind.Ct.App. 1999), this court held:

> The constitutional rights of prisoners are limited by the fact of incarceration and valid penological objectives, including deterrence of crime, rehabilitation of · prisoners, and institutional security. ... When a prison regulation impinges on an inmate's constitutional rights, the regulation is nevertheless valid if it is reasonably related to legitimate penological interests and does not represent an exaggerated response to those concerns.

Admittedly, there are differences between prison inmates and work release participants. However, there are also similarities. Work release participants "are actually jail inmates who must return to the jail when not working or participating in other sanctioned activities." *Green,* 719 N.E.2d at 430. Thus, a work release facility may find it necessary to impinge on an inmate's constitutional rights to further its objectives of deterring crime, rehabilitating its inmates, and security.

 Moreover, we find that Crump was not subject to an unreasonable search and seizure. On March 27, 1999, Crump deviated from the standard check-in procedure as administered by Community Corrections. Because of this deviation, Officer Vice went to Crump's cell block and asked him to step out. At that point, Officer Vice detected an odor of alcohol on Crump's breath. The odor of alcohol was enough to find that Crump had consumed alcohol and, thus, violated his work release contract and his probation. Detecting the odor of alcohol on a person's breath does not constitute a search. Therefore, we cannot find that paragraph 13, as executed, violates Fourth Amendment protections, because the Fourth Amendment has not been implicated in the present case.

Finally, Crump contends that paragraph 2 of his work release contract permits Community Corrections to remove earned credit time. Paragraph 2 states:

> I understand that in addition to Judicial review, I will also be subject to administrative disciplinary action for failure to follow the Work Release disciplinary code and sanctions. I am subject to loss of privileges, loss of earned credit time, and additional in-house work details, as stated in the Hamilton County Disciplinary Code and Sanctions.

(R. 188). Crump cites to *Campbell v. State,* 714 N.E.2d 678 (Ind.Ct.App.1999), *reh'g denied. Campbell* held that the deprivation or restoration of a person's credit time is a discretionary matter entrusted not to the courts but to the administrators of the Department of Corrections. *Id.* at 683–684.

Paragraph 2 of the work release contract does not state that Community Corrections can take away earned credit time. It states that Crump is subject to loss of his earned credit time as stated in the Hamilton County Disciplinary Code and Sanctions. The Hamilton County Disciplinary Code and Sanctions is not supplied in the record, and the loss of earned credit time is not an issue before this court. Thus, we cannot determine whether Community Corrections is given the authority to take away earned credit time.

For the aforementioned reasons, we do not find that Crump's work release contract is void. Consequently, we find that the trial court did not abuse its discretion in determining that Crump violated his work release contract, nor do we find that the trial court abused its discretion in revoking Crump's placement with Community Corrections.

### IV. *Sentencing*

 Crump's plea agreement provided that he was not to receive a sentence of more than five years. Crump argues that it was error to impose a sentence of eight years executed, which was a sentence contrary to the agreement of the parties as accepted by the trial court.

A plea agreement is contractual in nature and binds the defendant, the state and the trial court. *Pritscher v. State*, 675 N.E.2d 727, 732 (Ind.Ct.App. 1996). The trial court is given the discretion to accept or reject a plea agreement, and, if it accepts the agreement, it is strictly bound thereby. *Id.*; Ind.Code § 35–35–3–3(e). Crump argues that this authority shows that it was error to impose a sentence of eight years executed.

However, Ind.Code 35–38–2–3(g)(3) states: "If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may: (3) order execution of the sentence that was suspended at the time of initial sentencing."

Crump was sentenced to eight years at the Indiana Department of Correction, two years executed on a work release as supervised by Community Corrections, and five years probation. In addition to any terms and conditions of probation, the trial court required Crump to serve one year of electronically monitored home detention as supervised by Community Corrections. Moreover, Crump was not to possess, transport, consume or be near alcoholic beverages, or be found in any business establishment where alcoholic beverages are the primary product for sale.

We have found that Crump violated his probation and placement with Community Corrections by consuming alcohol. Ind. Code § 35–38–2–3(g)(3) gives the trial court the authority to revoke a defendant's probation and order execution of the sentence that was suspended at the time of initial sentencing, if the court finds that the defendant violated a condition of his probation.

In *Goonen v. State*, 705 N.E.2d 209, 212 (Ind.Ct.App.1999), this court held that, with respect to probation revocation, we will only review the trial court's decision for an abuse of discretion. *Goonen* further held that "so long as the proper procedures have been followed in conducting a probation revocation hearing pursuant to Indiana Code Section 35–38–2–3, the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence." *Id.*

The trial court properly revoked Crump's probation. Thus, we find that the trial court did not abuse its discretion in ordering Crump to serve his suspended sentence.

Finally, Crump argues that the trial court improperly imposed the maximum sentence of eight years for a Class C felony without articulating why it deviated from the presumptive sentence of four years. In *England v. State*, 530 N.E.2d 100, 103 (Ind.1988), our supreme court held that the proper forum to contest the validity of the prior conviction is in a direct attack in the court of conviction. Therefore, we find that Crump's complaint about his sentence cannot be reviewed in an appeal from the revocation of probation.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly revoked Crump's probation and placement with Community Corrections, and properly ordered him to serve his suspended sentence.

Affirmed.

NAJAM and BROOK, JJ., concur.