Scottie HART, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 49A02–0803–PC–241.

Court of Appeals of Indiana.

July 22, 2008.

Scottie Hart, Indianapolis, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Scottie Hart, pro se, appeals from the denial of his petition for post-conviction relief.

We affirm.

*ISSUES*

1. Whether the trial court erred in revoking Hart's probation.

2. Whether Hart received ineffective assistance of trial counsel.

3. Whether the prosecutor committed misconduct.

4. Whether the post-conviction court exhibited prejudice.

*FACTS*

On October 17, 2001, Hart, by counsel, and the State filed a plea agreement in Marion Superior Court, whereby Hart agreed to plead guilty to one count of class C felony auto theft under cause number 49G03–0006–CF–101079 ("Cause No. 079") and one count of class C felony auto theft under cause number 49G03–0106–CF–127986 ("Cause No. 986").[1] On both counts and pursuant to the State's recommendation, the trial court sentenced Hart to eight years, with six years suspended. The trial court ordered the sentences to be served consecutively. Thus, Hart received a total executed sentence of four years. The trial court also imposed one year of probation for each count.

On November 1, 2001, the Morgan Superior Court found Hart guilty of class B felony burglary under cause number 55D02–0006–CF–148 ("Cause No. 148"). The trial court sentenced Hart to eight years in the Department of Correction (the "DOC"), to be served concurrently with Hart's sentences in Cause Nos. 079 and 986.

The DOC "discharged" Hart from his first sentence under Cause No. 079 on April 8, 2002 and "discharged" Hart from his second or consecutive sentence under Cause No. 986 on April 6, 2003. (Ex. C, Ex. D). Hart, however, continued to be incarcerated on the eight-year sentence he received in Morgan County for burglary. On March 11, 2005, the DOC released Hart on parole from the Morgan County sentence, with a maximum sentence-expiration date of January 22, 2009.

On July 6, 2005, the Marion County Probation Department (the "Probation Department") filed a notice of probation violation, which it amended on July 28, 2005. On August 12, 2005, the Probation Department filed another notice of probation violation, alleging that Hart had "tested positive for cannabinoids"; failed to pay his

1. Ind.Code § 35–43–4–2.5.

court-ordered financial obligation; and submitted several "diluted urine screen[s]." (App.41). The trial court held a hearing on Hart's alleged probation violations on September 6, 2005; Hart, by counsel, admitted the violations. The trial court ordered "continued probation" with additional conditions. (App.16). Apparently, Hart and the State entered into some type of agreement regarding the probation violations, which provided that if Hart violated the terms of his probation, his "probation would be revoked and a 3 year sentence would be served." (App. 111).[2]

According to the chronological case summary (the "CCS"), the Probation Department filed another notice of probation violation on September 26, 2005, and the trial court issued a warrant for Hart's arrest.[3] The trial court held a hearing on February 7, 2007, during which Hart, by counsel, admitted to having violated the conditions of his probation. The trial court therefore revoked Hart's probation and ordered Hart to serve four years of his suspended sentence per "an Agreed Entry[.]" (App. 112).

On May 14, 2007, while serving his four-year sentence for his probation violation, Hart, pro se, filed a petition for post-conviction relief. Hart alleged the following: (1) the trial court "was without subject matter jurisdiction to enter judgment on probation violation"; (2) Hart's sentence "violates constitutional prohibition against double jeopardy"; (3) "ineffective assistance of counsel denied [Hart] his right to representation at trial court"; (4) "judicial misconduct denied [Hart] a fair hearing before an unbiased judge"; and (5) "prosecutorial misconduct denied

[Hart] due process of law and a fair hearing[.]" (App.46).

The post-conviction court held a hearing on July 10, 2007. On January 25, 2008, the post-conviction court entered its findings of fact and conclusions of law, denying Hart's petition for post-conviction relief.

## DECISION

■■■■ A post-conviction petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Thompson v. State*, 796 N.E.2d 834, 838 (Ind.Ct.App.2003), *trans. denied*; Ind. Post–Conviction Rule 1(5). When reviewing the denial of a petition for post-conviction relief, we will neither reweigh the evidence nor judge the credibility of the witness. *Id.* Thus, to prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Id.* We will disturb the post-conviction court's decision only if the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. *Id.*

### 1. *Probation Revocation*

■■■ Hart asserts that the trial court erred in revoking his probation. Specifically, Hart contends that he was not on probation when the probation violations occurred, arguing that his "probation period on the Marion County cases was effectively eaten up by the greater concurrent unrelated Morgan County sentence." Hart's Br. at 8.

Indiana Post–Conviction Rule 1(1)(a)(5) provides that "[a]ny person who has been

---

2. Hart has not provide us with a copy of the agreed entry. This provision is found in the post-conviction court's findings of fact.

3. It appears that Hart had absconded.

convicted of, or sentenced for, a crime by a court of this state, and who claims . . . that his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint . . . may institute at any time a proceeding under this Rule to secure relief."

Regarding revocation of probation, Indiana Code section 35–38–2–3 provides, in pertinent part, as follows:

(a) The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed during the probationary period or before the earlier of the following:

(A) One (1) year after the termination of probation.

(B) Forty-five (45) days after the state receives notice of the violation.

\* \* \*

(g) If the court finds that the person has violated a condition at any time before termination of the period, and the petition to revoke is filed within the probationary period, the court may:

(1) continue the person on probation, with or without modifying or enlarging the conditions;

(2) extend the person's probationary period for not more than one (1) year beyond the original probationary period; or

(3) order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Hart maintains that the trial court abused its discretion in ordering execution of his suspended sentence because he was not on probation at the time of the violation. Hart argues that he had already served his probation as his "one (1) year period of . . . probation expired before [he] was ever released from prison." Hart's Br. at 9. In support of his argument, Hart cites *Crump v. State*, 740 N.E.2d 564, 568 (Ind.Ct.App.2000), *trans. denied*, which held that "the probationary period begins immediately after sentencing and ends at the conclusion of the probationary phases of the defendant's sentence."

In *Crump*, Crump argued that the trial court erred in revoking his probation because the probation violation occurred before the probationary phase of his sentence started. Thus, the issue determined by this court was whether a defendant, who is not yet on probation, can violate his probation prospectively. Finding that Crump's "probationary period" began immediately after sentencing, this court found no error in revoking Crump's probation upon a showing of a violation " 'at any time before the completion of the probationary period.' " 740 N.E.2d at 568 (quoting *Gardner v. State*, 678 N.E.2d 398, 401 (Ind.Ct.App.1997)).

Although a defendant's "probationary period" begins immediately after sentencing, in general, the actual monitoring of a defendant by the probation department, or what is more commonly referred to as the "actual probation," in fact "begins at a later date." *Kopkey v. State*, 743 N.E.2d 331, 339 (Ind.Ct.App.2001); *see also Crump*, 740 N.E.2d at 568 ("Although Crump's actual probation had not yet begun, a defendant's 'probationary period' begins immediately after sentencing."). Thus, while Hart may have been within his "probationary period" while incarcerated, he had not yet actually begun serving the monitored probation components of his sentences outside of prison. Rather, Hart's release from the DOC triggered the monitored probationary phase of his sen-

tence. We find no legal support for or merit to Hart's contention otherwise.

Hart further relies on *Meeker v. Indiana Parole Board,* 794 N.E.2d 1105 (Ind.Ct.App.2003), *trans. denied,* in support of his contention that he served and completed his probation while simultaneously serving his executed sentences. Specifically, Hart argues that his probation could not have been suspended while he served his consecutive sentence under Cause No. 986 and the remainder of his concurrent sentence under Cause No. 148.

*Parker v. State,* 822 N.E.2d 285 (Ind.Ct. App.2005) aptly summarizes *Meeker* as follows:

> Meeker was ordered to serve two dealing convictions concurrently in 1991. In 1995, Meeker was released on parole. In 1996, Meeker's parole was revoked after he was convicted of several alcohol related offenses, and he was ordered to serve the balance of the two dealing sentences. In 1998, the parole board decided Meeker should be "turned over" to serve the sentences on the alcohol related offenses. In 2000, Meeker was released on parole again. The 1991 convictions were used as the basis of the parole. In 2001, the parole board again revoked Meeker's parole and reinstated the remaining sentences on the 1991 dealing convictions.

822 N.E.2d at 286–87 (internal citations omitted). Following Meeker's appeal, this court concluded that "the parole board could not effectively suspend Meeker's parole on one set of sentences until after he served the sentences on the other unrelated convictions." *Meeker,* 794 N.E.2d at 1108.

 Hart's reliance, however, on *Meeker* is misplaced as Hart "blurs the distinction between parole and probation." *Harris v. State,* 836 N.E.2d 267, 283 (Ind. Ct.App.2005).

[P]arole is defined in relevant part as "[t]he release of a prisoner from imprisonment before the full sentence has been served." In contrast, probation is defined as "[a] court-imposed criminal sentence that, subject to stated conditions, releases a convicted person into the community instead of sending the criminal to jail or prison."

*Harris v. State,* 762 N.E.2d 163, 167 (Ind. Ct.App.2002) (internal citations omitted), *trans. denied.* Thus, "[p]robation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior *in lieu of imprisonment.*" *Abernathy v. State,* 852 N.E.2d 1016, 1020 (Ind.Ct.App.2006) (emphasis added). "This gives the defendant an opportunity to show he is able to rehabilitate himself and become a useful member of society without serving his time in prison" as well as "gives the sentencing court an opportunity to observe the defendant's conduct during this period." *White v. State,* 560 N.E.2d 45, 46 (Ind.1990). Given the rehabilitative purpose of probation, a process which can only be accomplished outside the confines of prison, it is axiomatic that "[o]ne may not be simultaneously on probation and serving an executed sentence." *Thurman v. State,* 162 Ind. App. 576, 320 N.E.2d 795, 797 (1974).

Hart further relies on Indiana Code section 35–50–6–1(a)(3), which provides, in pertinent part, as follows: "[W]hen a person imprisoned for a felony completes his fixed term of imprisonment, less the credit time he has earned with respect to that term, he shall be .... released to the committing court if his sentence included a period of probation." Hart contends that under this statute, he "completed service of [Cause No. 079] on April 8, 2002, and ... was to be released to serve his probation. Hart's probation would be completed

on April 6, 2003, with no violation." Hart's Br. at 9.

Hart's reliance, however, is again misplaced as this "credit time statute is only applied to determine when felons are eligible for parole." *Page v. State*, 517 N.E.2d 427, 430 (Ind.Ct.App.1988). Once the felon is released from the Department of Correction, after having received credit time, he "is released to either parole or probation[.]" *Id.* In Hart's case, he was not released on April 8, 2002; therefore, Indiana Code section 35–50–6–1 did not apply.

Because Hart's probationary period had not expired when he committed his violation in September of 2005, the trial court did not abuse its discretion in revoking Hart's probation and ordering him to serve the remainder of his suspended sentence. We therefore find no error in denying Hart's petition for post-conviction relief on this basis.[4]

## 2. Ineffective Assistance of Trial Counsel

Hart asserts that he was denied effective assistance of trial counsel during the probation revocation proceedings because his counsel "fail[ed] to confirm Indiana statutes of consecutive sentencing and I.C. 35–50–6–1(A)(3), after Hart informed counsel that the probations were invalid...." We disagree.

 We evaluate claims concerning denial of the Sixth Amendment right to effective assistance of counsel using the two-part test articulated in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Cooper v. State*, 687 N.E.2d 350, 353 (Ind.1997). A defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that the deficiencies in the counsel's performance were prejudicial to the defense. *Id.* As to counsel's performance, we presume that counsel provided adequate representation. *Sims v. State*, 771 N.E.2d 734, 741 (Ind.Ct.App. 2002), *trans. denied.* · "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference." *Id.* Furthermore, a petitioner must show more than isolated poor strategy, bad tactics, a mistake, carelessness or inexperience. *Law v. State*, 797 N.E.2d 1157, 1162 (Ind.Ct.App.2003). As to prejudice, "there must be a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Given our holding above, Hart has failed to show that he was prejudiced by any alleged deficient performance on the part of his counsel. Thus, Hart's claim of ineffective assistance of trial counsel must fail.

## 3. Prosecutorial Misconduct

 Hart next contends that the prosecutor committed misconduct. Specifically, Hart maintains that the prosecutor made the following false statement in the proposed conclusions of law: "Hart cites to

---

4. We find this issue to be dispositive of Hart's first two issues: whether the trial court lacked subject matter jurisdiction and whether Hart's probation revocation constituted double jeopardy. Both issues derive from Hart's claim that he served and completed his probation while incarcerated. To the extent that Hart raises additional arguments, those arguments are waived. *See* Ind. Appellate Rule 46(A)(8) ("Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on ..."); *Smith v. State*, 822 N.E.2d 193, 202–03 (Ind.Ct.App.2005) (holding that a party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record), *trans. denied.*

no statutory or case law which allows for service of probation while incarcerated." (App.115). Hart also maintains the prosecutor committed misconduct in failing to acknowledge that his probation revocation was improper as no violation occurred during his probationary period.

A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. The gravity of peril is measured not by the degree of the misconduct but by the probable persuasive effect on the jury's decision.

*Hyppolite v. State,* 774 N.E.2d 584, 599 (Ind.Ct.App.2002).

Again, given our above holding, we cannot say that the prosecutor committed misconduct or placed Hart in a position of grave peril. Accordingly, we find no reversible error.

### 4. *Post–Conviction Court's Alleged Bias*

 Hart asserts that the post-conviction court exhibited prejudice during the post-conviction hearing and by entering its findings of fact and conclusions of law. We disagree.

Merely asserting bias and prejudice does not make it so. The law presumes that a judge is unbiased and unprejudiced. To rebut that presumption, a defendant must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy. Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding. An adverse ruling alone is insufficient to show bias or prejudice. Rather, the record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been disqualified.

*Massey v. State,* 803 N.E.2d 1133, 1138–39 (Ind.Ct.App.2004).

 Hart argues the following indicated the post-conviction court's bias: (1) granting the State's motions for extension of time over Hart's objection; (2) failing to "correct perjury or false statements made in [the][S]tate's Findings of Fact"; and (3) failing "to issue ruling or opinions of the court." Hart's Br. at 20. We, however, find no basis for Hart's claims in the record. Rather, a review of the record shows that the post-conviction court properly granted motions for extension of time, which were requested in good faith and due to the State's heavy case load and change in staff; Hart did not cite to authority, stating that one may simultaneously serve an executed sentence and a term of probation; and the post-conviction court ruled on motions before it and entered findings of fact and conclusions of law.[5]

Affirmed.

NAJAM, J., and BROWN, J., concur.

---

**5.** To the extent that Hart argues that the post-conviction erred in adopting the State's findings of fact and conclusions of law, we note that Indiana's Supreme Court has "expressly declined to prohibit the practice." *Prowell v. State,* 741 N.E.2d 704, 709 (Ind.2001), *cert. denied,* 525 U.S. 841, 119 S.Ct. 104, 142 L.Ed.2d 83 (1998).