

FILED

Dec 31 2020, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Derek R. Aguilar
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derek R. Aguilar, | December 31, 2020 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 20A-PC-949 |
| v. | Appeal from the Adams Circuit Court |
| State of Indiana, | The Honorable Chad E. Kukelhan, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 01C01-1910-PC-3 |

**Bailey, Judge.**

# Case Summary

Derek R. Aguilar ("Aguilar") appeals, *pro se*, the denial of his petition for post-conviction relief, which was based on a premise that he should have been released to probation, not parole. He raises five issues, which we consolidate and restate as whether the court erred by denying his motion for summary disposition and granting the State's cross-motion for summary disposition.

We affirm.

# Facts and Procedural History

In 2006, Aguilar entered a plea agreement concerning two criminal causes: 01C01-0511-FB-10 ("FB-10") and 01C01-0512-FB-12 ("FB-12"). In pertinent part, the plea agreement specified that Aguilar would plead guilty to one count of Burglary in FB-10. As a sentence for that count, Aguilar would serve twenty years in the Indiana Department of Correction (the "DOC"). As for FB-12, Aguilar would plead guilty to several offenses and serve an aggregate term of ten years in the DOC with all the time suspended to probation. The aggregate term in FB-12 would run consecutive to the sentence in FB-10. Summarizing the sentencing arrangement, the plea agreement specified that the "combined sentence" across causes was "30 years to the [DOC], 20 served, 10 suspended." App. Vol. 2 at 46. The agreement also stated that the ten years of probation in FB-12 would begin "following release from incarceration" in FB-10. *Id.*

[4]     At a sentencing hearing, Aguilar pleaded guilty and the court sentenced Aguilar in accordance with the terms of the plea agreement.[1] In sentencing Aguilar, the court orally noted that there would be "ten years of formal probation following [Aguilar's] release from incarceration" in FB-10. *Id.* at 70. The court also instructed Aguilar to "report to the probation department following [his] release from the [DOC]." *Id.* at 71. Thereafter, the court orally recited conditions of Aguilar's probation, including that he obey all laws. The court also issued an abstract of judgment for FB-10 with a box checked indicating that Aguilar should be returned to the court for probation at the completion of his sentence.

[5]     Aguilar began serving his twenty-year sentence in FB-10. After accruing credit time in FB-10, Aguilar signed a conditional parole release agreement and was placed on parole in April 2016. Aguilar was also placed on probation in FB-12.

[6]     In July and August of 2016, the State filed petitions alleging that Aguilar violated the conditions of probation in FB-12. Aguilar and the State negotiated an agreement whereby Aguilar would serve 2,370 days in the DOC and have no further probationary period in FB-12. At a September 2016 revocation hearing, Aguilar admitted to violating the conditions of probation, including by using marijuana. Aguilar's probation in FB-12 was revoked and he was ordered to serve 2,370 days in the DOC. Aguilar began serving that executed sentence.

---

[1] The State notes—and Aguilar does not dispute—that the court declined to enter a plea of guilty as to one count in FB-12 but the dismissal of that count did not affect the aggregate ten-year sentence in FB-12.

[7]     Meanwhile, the parole board held a hearing on allegations that Aguilar violated the conditions of his parole by failing to report to his parole agent as instructed. In November 2016, the parole board revoked ten years of Aguilar's credit time in FB-10. The executed time was arranged so that Aguilar would serve the balance of his sentence in FB-10 before the balance of his sentence in FB-12.[2]

[8]     In September 2019, Aguilar filed a petition for post-conviction relief. The petition focused on whether Aguilar was improperly placed on parole in FB-10. According to Aguilar, both his plea agreement and Indiana law required that he instead begin serving his term of probation in FB-12. Aguilar claimed that the parole board exceeded its statutory authority by, *inter alia*, releasing him to parole rather than probation. Aguilar also claimed that he was deprived of due process because of errors in handling his sentence. Aguilar moved for summary disposition. Following a hearing, the State filed a cross-motion for summary disposition. The court later granted the State's cross-motion for summary disposition, thereby denying Aguilar's petition for post-conviction relief.

[9]     Aguilar now appeals.

---

[2] On appeal, the State asserts that Aguilar "had not begun to serve his probation in FB-12 when his parole and probation were revoked." Br. of Appellee at 11. However, this assertion is inconsistent with the State's position below. Indeed, in its motion for summary disposition, the State asserted that Aguilar was "placed on probation for the sentence in [FB-12]," App. Vol. 2 at 89, and at the hearing, the State argued that Aguilar was "on parole for [FB-10], probation for [FB-12]," Tr. Vol. 2 at 15. We also note that the order revoking probation states that Aguilar admitted to violating the conditions of probation by, *inter alia*, "associating with another probationer" and "quitting his job without permission of his probation officer." App. Vol. 2 at 77.

# Discussion and Decision

[10] Post-conviction proceedings are civil proceedings in which a person may present limited challenges to a criminal conviction or a sentence. *See* Ind. Post-Conviction Rule 1; *Gibson v. State*, 133 N.E.3d 673, 681 (Ind. 2019), *cert. denied*.[3] Generally, "[t]he scope of potential relief is limited to issues unknown at trial or unavailable on direct appeal." *Gibson*, 133 N.E.3d at 681. In a post-conviction action, the petitioner "has the burden of establishing his grounds for relief by a preponderance of the evidence." P-C.R. 1(5). If there are disputed factual issues, the trial court must hold an evidentiary hearing. P-C.R. 1(4)(g), 1(5). However, pursuant to Indiana Post-Conviction Rule 1(4)(g), the court "may grant a motion by either party for summary disposition of the petition when it appears from the [evidence] submitted . . . that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." On appeal, we review "the grant of a motion for summary disposition in post-conviction proceedings . . . the same way as a motion for summary judgment." *Norris v. State*, 896 N.E.2d 1149, 1151 (Ind. 2008). Indeed, "summary

---

[3] On appeal, Aguilar asserts that he would be "entitled to . . . immediate release" if he prevails on certain claims. Reply Br. at 8. A claim that a person is entitled to immediate release may be addressed through a petition for a writ of habeas corpus. *See generally Young v. Duckworth*, 408 N.E.2d 1253, 60-61 (Ind. 1980). However, the types of claims Aguilar presents are also properly raised through a petition for post-conviction relief. *See* Ind. Post-Conviction Rule 1(1)(a)(5) (providing that a person who claims that "his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint . . . may institute at any time a proceeding under this Rule to secure relief"); *Mills v. State*, 840 N.E.2d 354, 357-58 (Ind. Ct. App. 2006) (addressing similar claims as post-conviction claims and noting that, in some instances, our post-conviction rules provide an alternative or additional remedy).

disposition, like summary judgment, is a matter for appellate *de novo* determination when the determinative issue is a matter of law, not fact." *Id.*

[11] To the extent our review requires the interpretation of a contract—such as a plea agreement—we construe contracts *de novo*, applying the plain language of the contract with a goal of "determining the intent of the parties at the time the plea was entered." *State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017). Similarly, to the extent our review requires statutory interpretation, we owe no deference to the court below. *See State v. Brunner*, 947 N.E.2d 411, 416 (Ind. 2011). Rather, we interpret statutes *de novo*. *Id.* When interpreting a statute, "our primary goal is to determine the legislature's intent." *D.P. v. State*, 151 N.E.3d 1210, 1216 (Ind. 2020). "[T]o ascertain that intent, we must first look to the statutes' language." *Id.* "If the language is clear and unambiguous, we give effect to its plain and ordinary meaning[.]" *Id.* However, if the statute is ambiguous, we "resort to rules of statutory interpretation so as to give effect to the legislature's intent." *Suggs v. State*, 51 N.E.3d 1190, 1194 (Ind. 2016). Further, if a criminal statute is ambiguous, we interpret the statute "in the defendant's favor as far as the language can reasonably support." *Calvin v. State*, 87 N.E.3d 474, 479 (Ind. 2017) (quoting *Mi.D. v. State*, 57 N.E.3d 809, 813 (Ind. 2016)); *see K.C.G. v.*

*State*, No. 20S-JV-263, 2020 WL 6707225, at *2 (Ind. Nov. 16, 2020) ("When the legislature is imprecise, the State does not get the benefit of the doubt.").[4]

[12] Here, the material facts are not in dispute. That is, there is no dispute that Aguilar entered a plea agreement regarding FB-10 and FB-12. Thereunder, Aguilar would serve twenty years in the DOC in FB-10. Consecutive thereto, Aguilar would serve an aggregate term of ten years in FB-12 with the time fully suspended to probation. Aguilar began serving his executed sentence in FB-10. After accruing adequate credit time, Aguilar was placed on parole in FB-10.

[13] In petitioning for post-conviction relief, Aguilar argued that he should have bypassed parole in FB-10 and moved straight to his term of probation in FB-12. Aguilar's argument turns on his reading of the following statute:

> [W]hen a person imprisoned for a felony completes his fixed term of imprisonment, less the credit time he has earned with respect to that term, he shall be:
>
> > (1) released on parole for not more than twenty-four (24) months, as determined by the parole board;
> >
> > (2) discharged upon a finding by the committing court that the person was assigned to a community transition

---

[4] Aguilar asserts that the court below adopted language from the State's cross-motion and "gave no legal authority or case law" to support remarks in its order. Br. of Appellant at 12. Because we review *de novo* the decision granting the motion for summary disposition, we need not further address Aguilar's assertions.

program and may be discharged without the requirement of parole; **or**

(3) released to the committing court if his **sentence** included a period of probation.

Ind. Code § 35-50-6-1(a) (2005) (emphases added).

[14] Aguilar argues that he received a non-divisible thirty-year "sentence" across FB-10 and FB-12 with the first twenty years executed in the DOC and the last ten years suspended to probation. According to Aguilar, because his "sentence" included a period of probation, the parole board exceeded its statutory authority by releasing him on parole under subsection (1) rather than to the committing court under subsection (3) for placement on probation. Aguilar also argues that the handling of his release violated the terms of his plea agreement and ran afoul of principles of due process.[5] In support of his argument, Aguilar directs us to language in his plea agreement referring to a "combined sentence" across causes. App. Vol. 2 at 46. He also points out that, at sentencing, the trial court stated that Aguilar was "to report to the probation department following [his] release from the [DOC]." *Id.* at 71. Additionally, Aguilar directs our attention to the abstract of judgment for FB-10, where a "Yes" box is checked next to the

---

[5] Aguilar briefly asserts that, during a hearing, the State "concede[d]" that Aguilar completed his sentence in FB-10 and "had to be released back to the committing court to start probation[.]" Br. of Appellant at 13. Having reviewed the State's remarks in context, we disagree that there was a concession regarding this issue.

following statement: "Is the defendant to be returned to the Court for probation at the completion of his/her sentence?" *Id.* at 75.

[15] Aguilar's arguments turn on the premise that it is possible to receive a single "sentence" for multiple convictions. Critically, the Indiana Code requires a discrete sentence for each offense. *See* I.C. § 35-50-1-1 ("The court shall fix the penalty of and sentence a person convicted of an offense."); *Serino v. State*, 798 N.E.2d 852, 856 (Ind. 2003) (referring to "[t]he statutory process by which trial judges fashion discrete sentences"). Moreover, each offense corresponds to a discrete advisory sentence, *i.e.*, "a guideline sentence that the court may voluntarily consider when imposing a sentence." I.C. § 35-50-2-1.3(a). There is also a discrete sentencing range. *See, e.g.*, I.C. 35-50-2-5.5 (setting forth the advisory sentence and sentencing range for a Level 4 felony). Furthermore, when there are multiple convictions, the court has discretion in how to arrange all the sentences—*e.g.*, concurrent or consecutive—as part of an overall scheme. *See* I.C. § 35-50-1-2; *cf. Hannis v. Deuth*, 816 N.E.2d 872, 877 (Ind. Ct. App. 2004) ("[W]ith respect to any given sentence a person is in one of four stages," *i.e.*, (1) "waiting to start serving the sentence," (2) "serving the sentence," (3) "on parole on the sentence," or (4) "discharged from the sentence.").

[16] Because it is not possible to receive a single "sentence" across counts, let alone across causes, Aguilar cannot demonstrate that he was improperly placed on parole in FB-10 because of a suspended sentence in FB-12. Moreover, even assuming *arguendo* that it is possible to negotiate a plea agreement that calls for bypassing parole under subsection (1), the instant plea agreement does not

express an intent to operate in this fashion. Indeed, although the agreement refers to a "combined sentence" when summarizing the overall arrangement, the agreement identifies two causes and sets forth a discrete sentence for each offense. In other words, the agreement calls for a standard sentencing scheme. Thus, we agree with the State that "[t]he plea agreement did nothing to prohibit the parole board from placing Aguilar on parole in FB-10[.]" Br. of Appellee at 16. Furthermore, we are not persuaded that Aguilar was required to be released to probation in FB-12 because of the checked box in the abstract of judgment in FB-10. The checked box indicated that Aguilar was to be returned to the court for probation at the completion of his twenty-year sentence in FB-10. Notably, Aguilar was not yet discharged from that sentence because he was on parole. Moreover, we are also not persuaded that the court's remarks at sentencing evinced the intent to have Aguilar exclusively released to probation. Rather, the cited remarks relate to the timing of Aguilar's duty to report to probation.

[17] In urging a different reading of Indiana Code Section 35-50-6-1(a), Aguilar directs us to *Meeker v. Ind. Parole Bd.*, 794 N.E.2d 1105 (Ind. Ct. App. 2003), *trans. denied*, and *May v. State*, 58 N.E.3d 204 (Ind. Ct. App. 2016). Yet, *Meeker* involves the propriety of suspending a period of parole until after a person has served sentences in a separate case, 794 N.E.2d at 1108-09, and *May* involves the propriety of revoking a person's probation when the DOC tells the person he is on parole, not probation, 58 N.E.3d at 206-07. Because this case involves different factual circumstances, Aguilar's reliance on those cases is misplaced.

[18] Aguilar also directs us to caselaw for the proposition that "'[o]ne may not be simultaneously on probation and serving an executed sentence.'" *Hart v. State*, 889 N.E.2d 1266, 1271 (Ind. Ct. App. 2008) (alteration in original) (quoting *Thurman v. State*, 320 N.E.2d 795, 797 (1974)). In focusing on this language, Aguilar appears to rely on the principle that "parole . . . is, in legal effect, still imprisonment." *Page v. State*, 517 N.E.2d 427, 430 (Ind. Ct. App. 1998), *trans. denied*. Thus, according to Aguilar, it was improper for him to simultaneously be on probation in FB-12 while still serving an executed sentence in FB-10. Aguilar also points out that the sentencing court had imposed consecutive terms. Aguilar seems to argue that, because the court had imposed consecutive terms, he could not have simultaneously been on probation and parole and, instead, should have been placed only on probation. Aguilar also implicitly argues that, even if parole was proper, he should not have been placed on probation in FB-12, so his probation in FB-12 should not have been revoked.

[19] Ultimately, Aguilar reads caselaw about simultaneous service too expansively. This line of caselaw stands for the proposition that one cannot be incarcerated while simultaneously receiving rehabilitative services associated with probation. *See, e.g.*, *Hart*, 889 N.E.2d at 1271 (noting that, "[g]iven the rehabilitative purpose of probation," that rehabilitative process "can only be accomplished outside the confines of prison"). We discern no legal impediment to a person simultaneously serving parole and probation in **separate** sentences, a scheme that would benefit a defendant by allowing him to expeditiously serve his time. *C.f., e.g.*, *Mills v. State*, 840 N.E.2d 354, 360 (Ind. Ct. App. 2006) (involving

circumstances where a person was on parole while serving a consecutive sentence); *Hannis*, 816 N.E.2d at 877 (involving similar circumstances).[6]

[20] Furthermore, even assuming *arguendo* that Aguilar should not have been on probation in FB-12 while on parole in FB-10, it is not as though the court lacked authority to revoke probation. Indeed, as the Indiana Supreme Court has explained "[p]robation may be revoked at any time for a violation of its terms," including "prior to the start of probation." *Champlain v. State*, 717 N.E.2d 567, 571 (Ind. 1999); *see also Baker v. State*, 894 N.E.2d 594, 597-98 (Ind. Ct. App. 2008) (noting that it is "well-established precedent that a defendant's probationary period begins immediately after sentencing"). Moreover, "it is always a condition of probation that a probationer not commit an additional crime," *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995), and, here, Aguilar admitted to using marijuana—which indicates that he possessed marijuana— and also admitted to violating other conditions of his probation. Furthermore, it seems that Aguilar never challenged the propriety of revoking probation, instead actively negotiating the revocation of only a portion of his suspended term. Thus, regardless of whether Aguilar should have simultaneously been on parole and probation, we discern nothing improper about revoking probation.

---

[6] Thus, although Aguilar points out that Indiana Code Section 35-50-6-1(a) is written in the disjunctive, requiring release to parole, release to the committing court for probation, or discharge, that statute limits the options as to a single sentence. As already discussed, probation was imposed in a **separate** sentence.

[21] Finally, to the extent Aguilar argues that the balance of the executed sentence in FB-12 was improperly held "in abeyance" until after he served the balance of his sentence in FB-10, we note that Aguilar's plea agreement called for the sentence in FB-12 to run consecutive to that in FB-10. In other words, Aguilar agreed to consecutive sentences and the arrangement of his sentences was a result of the plea agreement and original sentencing orders—not, as Aguilar asserts, the result of the parole board exceeding its statutory authority. Thus, we cannot say that the arrangement of the executed sentences is improper.

[22] Ultimately, because Aguilar's plea agreement had no impact on the operation of Indiana Code Section 35-50-6-1(a) and because no part of Aguilar's sentence in FB-10 was suspended to probation, we conclude that Aguilar was properly released on parole in FB-10. Moreover, because Aguilar was properly released on parole and his executed time in FB-12 was properly imposed consecutive to the time in FB-10, Aguilar has not shown a deprivation of due process. All in all, we discern no error in the order granting summary disposition to the State.

[23] Affirmed.

Robb, J., and Tavitas, J., concur.