**Randy S. GARDNER, a/k/a Jeffrey Gardner, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–9601–CR–49.**

Court of Appeals of Indiana.

April 2, 1997.

Steven R. Jacobs, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant Randy Gardner a/k/a Jeffrey Gardner (Gardner) appeals the trial court's

October 17, 1995 determination that he violated his probation and asserts that the court failed to properly credit him with jail time served.

We affirm.

Gardner presents two issue for our review which we will restate as follows:

1) Whether the trial court erred in determining that Gardner had violated his probation prior to the commencement of the probation.

2) Whether the trial court erred in failing to properly credit Gardner with time served while on a "probationary hold" after his April, 1995 arrest.

Gardner was arrested on August 10, 1994, and charged with operating a vehicle while intoxicated, possession of marijuana subject to an enhanced penalty because he was an habitual substance offender, and operating a vehicle while his license was suspended as a habitual traffic offender. Pursuant to a plea agreement, Gardner entered a plea to, and was found guilty of, operating a vehicle while intoxicated and operating a vehicle while suspended as an habitual traffic offender. On January 31, 1995, he was sentenced to 545 days on each count, to be served concurrently through a Community Corrections Program at "VOA." [1] The judgment and commitment order also provided that Gardner was to be "placed on Probation for 270 days following completion of the Community Corrections Commitment." Record at 44.

On April 10, 1995, Gardner was again arrested and eventually convicted of operating a vehicle while intoxicated. Gardner had not yet begun serving his executed sentence nor had he yet begun his 270 day probation period. Apparently, he was at liberty for the two months and ten days, while awaiting an opening at "VOA." The trial court revoked Gardner's "probation" and ordered him to serve nine months (270 days) in the custody of the Department of Correction. [2]

▇▇ Gardner's first argument is simple. He does not contest that his actions under

1. As the State points out in its Brief, there is no explanation in Gardner's Brief as to the meaning of "VOA." The State suggests it stands for "Volunteers of America."

2. Presumably Gardner's placement in VOA was also rescinded.

different circumstances would justify probation revocation; however, he notes that neither his probation nor his executed sentence had begun. The statute simply states that "[t]he court may revoke a person's probation if . . . [t]he person has violated a condition of probation during the probationary period." I.C. 35–38–2–3 (Burns Code Ed. Supp.1996). Gardner argues that the violation did not occur during the probationary period.

The resolution of Gardner's argument is not quite as simple. An examination of the record reveals that Gardner was sentenced to 545 days imprisonment with zero days suspended. However, Gardner was required to serve that sentence at a community corrections program ("VOA") with probation thereafter. The issue which this raises is whether Gardner received an executed sentence with probation following or a suspended sentence including time in a community corrections program.

Addressing the issues in reverse order, we note that the community corrections statute allows the court to "at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the department of correction." I.C. 35–38–2.6–3 (Burns Code Ed. Repl.1994). In fact, I.C. 35–38–2.6–4 requires that "[i]f the court places a person in a community corrections program under this chapter, the court shall suspend the sentence. . . ." In the light of this language, it appears that placement in a community corrections program is akin to probation.[3]

In *State v. Lowdermilk* (1964) 245 Ind. 93, 195 N.E.2d 476, our Supreme Court faced a situation in which a defendant's sentence had been suspended and his suspension was subsequently revoked. The court noted that

"[p]robation is merely the condition resulting from a suspended sentence." *Id.* 195 N.E.2d at 479. If that is the case, and placement into a community corrections program inherently involves the suspension of the defendant's sentence, then Gardner's sentence was suspended the day of sentencing.[4] The result is that Gardner was on probation from the day of sentencing onward; therefore we need not address the issue of whether Gardner violated his probation prospectively—he was on probation[5]

However, the trial court, in sentencing Gardner, used terms such as "executed sentence" and the orders setting the conditions of his community corrections and probation noted that Gardner received zero days suspended sentence.[6] In that case, Gardner's placement in the VOA would be an executed sentence, akin to commitment to the Department of Correction. If this involved an executed sentence with zero days suspended, Gardner's probation after the VOA commitment would ordinarily fly in the face of the principle that probation must rest upon a suspended sentence. Here, however, the legislature has circumnavigated that 'rule' with I.C. 35–38–2.6–7 which *requires* the trial court "place the person on probation" after completion of the community corrections program.

Reformulated with the above discussion in mind, Gardner's argument is that if there is no suspended sentence, there can be no probation save that mandated by the statute. If there is no probation before he begins his time at VOA, he is not subject to the rules of probation or his "incarceration." Thereby, he cannot violate any rule prospectively.

Gardner's argument must fail. In *Ashba v. State* (1991) Ind.App., 570 N.E.2d 937,

---

3. But we note that I.C. 35–38–2.6–5 allows the court only to reinstate the remainder of the defendant's sentence once the program has been revoked. Also, I.C. 35–38–2.6–6 allows the defendant to earn credit time under I.C. 35–50–6, much like an executed sentence and unlike traditional probation.

4. Under this theory, the community corrections program is a legislatively developed type of probation. Although its terms are perhaps more stringent than traditional probation, as noted

above, the defendant will get the advantage of credit for time served in the program.

5. In fact, Gardner had an intake interview with his probation officer on the date of sentencing, January 31, 1995.

6. At his probation revocation hearing, the trial judge (the same that sentenced him originally) said that "he had 545 days suspended." Record at 98.

*affirmed* 580 N.E.2d 244, *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1767, 118 L.Ed.2d 428, we held that a defendant who was on parole from the Indiana Department of Correction, but not yet on probation, can violate his probation prospectively. The court noted that I.C. 35–38–2–3(g) allows the court to revoke probation if it finds that the defendant violated "a condition at any time before termination of the [probationary] period." *Ashba* interpreted the language to permit "the trial court to terminate probation before a defendant has completed serving his sentence or to revoke probation before the defendant enters the probationary phases of his sentence." *Ashba, supra* at 939; *See also, Johnson v. State* (1993) Ind.App., 606 N.E.2d 881 (defendant's probation was properly revoked for a violation occurring while incarcerated).

▪ As this court has said countless times, the granting of a conditional liberty is a favor and not a right. *See Duncanson v. State* (1979) 181 Ind.App. 370, 391 N.E.2d 1157. When a trial court grants a defendant probation in lieu of an executed sentence, the trial court is taking many aspects of the defendant's character into account. When the defendant commits a crime or violates a term of the probation, the trial court should be able to weigh that violation in its reevaluation of whether the defendant should be or should have been granted probation. Although Gardner's case is distinguishable from the aforementioned cases in that he has not yet begun his sentence, we do not find the distinction compelling. Once a defendant has been sentenced, the court may revoke or modify probation, upon a proper showing of a violation [7], at any time before the completion of the probationary period.

The bright line between suspended-sentence punishments and executed-sentence punishments has been blurred by the implementation of the new alternative programs. Therefore, it may no longer be appropriate to make broad-sweeping assertions of punishments in either category. With the community corrections programs, for example, we have a hybrid punishment involving a suspended sentence which may be revoked, yet requires the defendant receive credit for time served. The case before us does not require the resolution of the host of legal issues which arise from the characterization of the sentence. Other problems may occur which find their genesis in this hybrid-type sentencing; however, it is for the courts to solve those problems as they arise unless our legislature sees fit to clarify the exact nature of these "alternative" forms of sentencing.

▪ Gardner's second assertion of error is rather confusing. The title to the relevant section of the defendant's brief argues in part that Gardner "was held on a probation from April 11, 1995, until April 26, 1995, and again in May, 1995. When the Judge imposed the 270 day sentence, he should have given the Defendant credit for his jail time already served." Appellant's Br. at 7.[8] What Gardner seems to argue is that he was incarcerated for this time period anticipating a revocation of his probation—a "probationary hold" as Gardner suggests. Subsequently, when his probation was revoked and a sentence of 270 days imposed, he should have received credit for those days that he was in jail. However, as the State points out, there is no evidence upon the record of Gardner being incarcerated during those dates or the reason for which he may have been incarcerated.[9] It is appellant's burden upon appeal to show that the trial court erred, and Gardner has neither fulfilled that burden by reference to the record, nor could he, as there is no evidence in the record.

---

7. There are some rules of probation that may not be applicable to prospective violation. For example, a probationer is required to report to his probation officer. A defendant could hardly do so while incarcerated, and it would not be practical to do so before the period of probation commences. However, criminal conduct is always violative of probation. *See Jaynes v. State* (1982) Ind.App., 437 N.E.2d 137, 139.

8. In the portion of Gardner's Brief entitled "Statement of Issues", there is no mention of this issue.

9. As the State points out, if Gardner was incarcerated at all, it may simply have been upon the additional driving while intoxicated offense which occurred on April 10, 1995—the day before the alleged "probationary hold."

In conclusion, Gardner's probation may be revoked—either because probation may be revoked prospectively or because he was already on probation. Additionally, Gardner has not shown any time in jail for which he was entitled credit time.

The decision of the trial court is hereby affirmed.

FRIEDLANDER and NAJAM, JJ., concur.