**David BAKER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 85A04–0807–CR–392.**

Court of Appeals of Indiana.

Oct. 15, 2008.

Craig Persinger, Marion, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

David Baker appeals the trial court's decision to revoke his probation and order executed the two (2) years of his suspended sentence for having committed another crime while serving the executed portion of his sentence.

We affirm.

### ISSUE

Whether the trial court erred in revoking probation because Baker had not yet begun to serve the probationary period of his sentence.

### FACTS

On September 26, 2007, the State charged Baker with two counts of class B felony burglary.[1] Pursuant to plea negotiations, on December 6, 2007, the State filed an amended information, in which it charged Baker with two counts of burglary, as class C felonies, and Baker agreed to plead guilty to both counts. Baker signed the plea agreement, which provided that the State would recommend that he be "sentenced to five (5) years in the Indiana Department of Correction with two (2) years suspended" on each count, with said sentences to be "served concurrently with each other...." (App. 43). Further, according to the CCS, on December 6, 2006, the trial court held a plea hearing.[2]

On January 3, 2008, the trial court accepted Baker's guilty pleas; entered judgment of conviction and sentencing. The trial court ordered Baker to serve concurrent five-year terms on each count, with two years suspended and placement on probation during the suspended term. Also on January 3, 2008, the trial court issued its order of probation, which in-

---

1. As noted by the State, the probable cause affidavit submitted to the trial court in support of the charging information stated that another suspect, Scott Glass, had admitted to an officer with the Wabash County Sheriff's Department that Glass and Baker broke into the Radabaugh residence and took a safe, and that he and Baker also broke into the Huston residence. The affidavit reflected that at the time of Glass's interview, law enforcement had already received reports of both residential burglaries.

2. Baker did not include a transcript of that hearing with his appeal.

cludes that Baker "not violate any law . . . during the term of [his] probation," and Baker signed and received a copy of the probation terms and conditions and the trial court's order. (App. 51).

On January 16, 2008, the State charged Baker with battery, as a class A misdemeanor, alleging that on January 9, 2008, while waiting to be transported to the Indiana Department of Correction, he battered inmate Dani Gill. Subsequently, on January 22, 2008, the State filed a petition to revoke Baker's probation, based on the allegation.

On April 15, 2008, the trial court held a fact-finding hearing. Gill testified that on January 9, 2008, he was an inmate in the Wabash County Jail, and that Baker had hit him several times with his fist on the sides and back of his head. Gill further testified that he had done nothing to provoke Baker and had not hit him first. Baker admitted having signed the order providing his probation terms on January 3, 2008, and that he had received a copy.

On April 16, 2008, the trial court found that Baker had violated the terms and conditions of probation and set the matter for disposition. Specifically, the trial court found that the State had proven by a preponderance of the evidence that on January 9, 2008, "while incarcerated in this cause," he had "committed a battery upon a fellow inmate." (App. 74). At the disposition hearing on May 5, 2008, the trial court ordered the two-year suspended sentence to be executed.

## DECISION

Baker argues that the trial court erred when it revoked his probation because "the jail house battery which the trial court found that [he] committed on January 9, 2008" was not committed during his "probationary period" but rather "while he [wa]s serving the executed portion of his sentence in a penal facility." Baker's Br. at 4, 5. Baker urges that we decline to follow *Ashley v. State*, 717 N.E.2d 927 (Ind.Ct.App.1999), which he characterizes as the "only reported Indiana case to directly address" the issue of "whether an individual's probation may be violated while he is serving the executed portion of his sentence in a penal facility." Baker's Br. at 5. Presumably, Baker would also have us discount all the other cases holding that a defendant's probationary period begins at the time sentence is imposed. We decline Baker's invitation to disagree with *Ashley*.

■ The trial court may revoke a person's probation if the person "has violated a condition of probation during the probationary period." Ind.Code § 35–38–2–3(a)(1). In *Ashba v. State*, 570 N.E.2d 937, 939 (Ind.Ct.App.1991), *aff'd* 580 N.E.2d 244 (Ind.1991), *cert. denied*, 503 U.S. 1007, 112 S.Ct. 1767, 118 L.Ed.2d 428, then-Judge Rucker addressed the issue of when the person's probationary period began, noting federal court reasoning that as a matter of "sound policy . . . courts should be able to revoke probation for a defendant's offense committed before the sentence commences," as "an immediate return to criminal activity is more reprehensive than one which occurs at a later date." He also noted various other jurisdictions that had "adopted the position that the trial court may revoke a defendant's probation before the defendant completes his sentence and begins his probationary period." *Id.* *Ashba* then held that the statute permitted the trial court "to terminate probation before a defendant has completed serving his sentence or to revoke probation before the defendant enters the probationary phases of his sentence." *Id.*

In *Johnson v. State*, 606 N.E.2d 881, 882 (Ind.Ct.App.1993), the defendant failed to return to the alternative placement facility, and his probation was revoked. Johnson argued that his probation could not be revoked because his probationary period had not yet commenced. We reminded him that probation was a conditional liberty and a favor, "not a right"; that the statute authorized the trial court to "revoke probation before the defendant enters the probationary" period of his sentence; and we affirmed the revocation of his probation. *Id.* (citing *Ashba*, 570 N.E.2d at 940, 939). In *Childers v. State*, 656 N.E.2d 514, 518 (Ind.Ct.App.1995), we cited *Johnson* and *Ashba* and held that because the statute continued to authorize the trial court "to revoke probation before the defendant enters the probationary phase of his sentence," the trial court "did not err in revoking Childers' suspended sentence" after he committed another crime "before the commencement of the probationary period."

In *Gardner v. State*, 678 N.E.2d 398, (Ind.Ct.App.1997), Gardner argued that his probation could not be revoked because he had not begun his probationary period. We noted the frequent appellate statement that "the granting of a conditional liberty is a favor and not a right." *Id.* at 401. Further,

> when a trial court grants a defendant probation in lieu of an executed sentence, the trial court is taking many aspects of the defendant's character into account. When the defendant commits a crime or violates a term of the probation, the trial court should be able to weigh that violation in its reevaluation of whether the defendant should be or should have been granted probation.

*Id.* Citing *Ashba* and *Johnson*, we affirmed the revocation of Gardner's probation. *Id.* at 402.

In *Ashley v. State*, 717 N.E.2d 927, 928 (Ind.Ct.App.1999), we cited *Ashba, Johnson*, and *Gardner* to reach our conclusion that the trial court could revoke Ashley's probation based on his commission of criminal offenses on the day after he was sentenced. In *Champlain v. State*, 717 N.E.2d 567 (Ind.1999), our Supreme Court expressly reiterated that "[p]robation may be revoked at any time for a violation of its terms," which "includes revocation prior to the start of probation." *Id.* at 571 (citing *Childers* and *Johnson*).

More recently, in *Crump v. State*, 740 N.E.2d 564, 568 (Ind.Ct.App.2000), *trans. denied*, we stated that "a defendant's 'probationary period' begins immediately after sentencing." Thus, because Crump committed a violation after being sentenced but "before the conclusion of the probationary phases of his sentence," he "was in his probationary period." *Id.* Finally, in *Rosa v. State*, 832 N.E.2d 1119, 1121 (Ind. Ct.App.2005), the defendant argued that his commission of a violation "before [his] probationary term began cannot serve as the basis for revoking his probation." We cited the reasoning of *Gardner* as to the proper consideration of post-sentencing behavior in determining whether a suspended sentence decision should stand. We expressly declined to hold that a defendant could "commit any number of offenses" between the date of sentencing and beginning his official probation term without any consequence therefor. 832 N.E.2d at 1122. We followed *Gardner*'s holding that "a defendant's probationary period begins immediately after sentencing and ends at the conclusion of the probationary period." *Id.* Thus, we affirmed the order that Rosa serve a portion of his previously suspended sentence. *Id.*

█ We find no reason to stray from the well-established precedent that a defendant's probationary period begins im-

mediately after sentencing. Baker was initially sentenced on January 3, 2008. That same day he was provided a copy of the written terms and conditions of his probation, which he signed. Six days later he committed criminal battery. This was a violation of the terms and conditions of his probation, and the trial court was well within its discretion and did not err when it revoked Baker's probation and ordered that he serve the two-year suspended sentence.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.