Michael A. KILGORE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A05–0910–CR–577.

Court of Appeals of Indiana.

March 4, 2010.

Transfer Denied April 7, 2010.

Harold E. Amstutz, Lafayette, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

Michael Kilgore appeals his conviction for escape as a class D felony[1] and his adjudication as an habitual offender.[2]

We affirm in part, reverse in part, and remand.

*ISSUES*

Kilgore raises the following issues:

1. Whether the State violated Kilgore's due process rights when it charged him with escape.

2. Whether the trial court abused its discretion in refusing a tendered jury instruction.

The State also raises the following issue:

Whether the trial court improperly sentenced Kilgore.

*FACTS*

On December 18, 2007, the trial court placed Kilgore on home detention, to be monitored by Tippecanoe County Community Corrections ("TCCC"), as a condition of his pre-trial release under Cause Number 79D06–0708–CM–1566 ("Cause No. 1566"). Also on December 18, 2007, Kilgore received a copy of TCCC's rules and conditions for participation in its pre-trial release home detention program. The rules and conditions provided, in pertinent part, as follows:

7. Any change in the daily schedule is to be approved only by the Home Detention division with [TCCC].

. . . .

12. Home Detention allows the person to be in one of four places: At work, at home, at alcohol/drug counseling, or in transit between places. Stopping anywhere in between or being anywhere else is a violation.

. . . .

---

1. Ind.Code § 35–44–3–5(b).

2. I.C. § 35–50–2–8.

24. I understand that I must have an authorization form before leaving my residence daily. All leaves must be approved prior to my leaving. I may not leave for any reason without prior permission. My failure to comply with this rule will constitute a violation of the program.

. . . .

26. I understand that if I leave my residence, remain outside my residence without permission, or travel to a location not authorized I will be charged with the criminal offense of, "**Unauthorized absence from Home Detention,**" a class A Misdemeanor under I.C. [§ ] 35–38–2.5–13.[3] At that time I will be considered a fugitive from justice.

(App.120–22). Kilgore acknowledged that he read and understood the terms and conditions of the pre-trial release home detention program and agreed to comply with all terms and conditions.

Subsequently, on July 16, 2008, the trial court convicted and sentenced Kilgore under Cause No. 1566 and Cause Number 79D06–0711–CM–1991 ("Cause No.1991") to "five (5) years with [TCCC] at a level to be determined by [TCCC]." *Id.* at 130. Accordingly, as of July 16, 2008, Kilgore was "a participant in [TCCC], . . . serving an executed sentence . . . in lawful detention." *Id.* TCCC placed Kilgore in its home detention program for sentencing purposes.

On February 23, 2009, Kilgore received notice that TCCC was transferring him to work release on February 27; 2009, due to his failure to pay his home detention fees; thus, he would be required to reside at TCCC's "lock down facility. . . ." (Tr. 31).

On February 26, 2009, Kilgore failed to report to TCCC Officer Clyde McCorkle as scheduled. According to the signal transmitted from Kilgore's ankle bracelet to TCCC's monitoring equipment, "he had left [home] shortly after 7 o'clock that morning . . ." and failed to return. *Id.* at 19. Officer McCorkle reported Kilgore's failure to appear and his unauthorized travel as violations of his home detention. The next day, Officer McCorkle received a voicemail from Kilgore, saying that "he had business to attend to before he went on work release [.]" *Id.* at 21.

Kilgore again telephoned Officer McCorkle on March 3, 2009. Kilgore informed him that he had traveled to Muncie to arrange care for his cat, "but he didn't have a way to get back to Lafayette; didn't have money to pay anyone for gasoline to bring him back to Lafayette." *Id.* at 22. Thus, Kilgore remained in Muncie, and as of March 4, 2009, had not returned to Lafayette.

On March 30, 2009, pursuant to IC 35–44–3–5(b) the State charged Kilgore with Count I, class D felony escape for "knowingly or intentionally violat[ing] a home

---

**3.** Indiana Code section 35–38–2.5–13 provides:

An offender who:

(1) leaves the offender's home in violation of section 6(1) of this chapter or without documented permission from the supervising entity;

(2) remains outside the offender's home in violation of section 6(1) of this chapter or without documented permission from the supervising entity; or

(3) travels to a location not authorized under section 6(1) of this chapter or not authorized in writing by the supervising entity;

commits unauthorized absence from home detention, a Class A misdemeanor.

Section 6.1 of Chapter 2.5 prescribes the contents for an order for home detention of an offender sentenced to home detention as a condition of probation. *See* I.C. §§ 35–38–2.5–6; 35–38–2.5–5

detention order or intentionally remov[ing] an electronic monitoring device." (App.6). Pursuant to Indiana Code Section 35–50–2–8(a), the State also alleged Kilgore to be an "habitual offender, having accumulated two (2) prior unrelated felony convictions."[4]

The trial court held a jury trial on August 27, 2009. The State and Kilgore stipulated that after being convicted under Cause Nos. 1566 and 1991 on July 16, 2008, the trial court sentenced him to "five (5) years with" TCCC, with TCCC to determine his level of placement; and on July 16, 2008, Kilgore was "a participant in [TCCC]," serving "an executed sentence ... in lawful detention." *Id.* at 130. The jury found Kilgore guilty as charged. The jury also found Kilgore to be an habitual offender.

The trial court held a sentencing hearing on September 22, 2009. Following the hearing, the trial court sentenced Kilgore as follows: "I'll suspend all three (3) years of the habitual offender and all three (3) of those years [Kilgore] will be spending on supervised probation.... So, it will be five (5) years, two (2) to be executed, three (3) suspended on supervised probation." (Sent. Tr. 47). The written sentencing order provided:

> The Court imposes the following sentence:
>
> 1) Imposes a jail sentence of two (2) years on Count I and three (3) years on Count II, consecutive, three (3) years suspended upon timely and satisfactory completion of all terms and conditions of probation. Defendant is ordered to serve two (2) years executed in Count I in the Indiana Department of Correction [ ] with credit for good time.

Defendant placed on SUPERVISED PROBATION for a period of three (3) years....

(App.196).

## DECISION

### 1. *Due Process*

■ Kilgore asserts that the State violated his due process rights when it charged him with class D felony escape instead of class A misdemeanor unauthorized absence from home detention, as provided for in paragraph 26 of TCCC's rules and conditions. Specifically, he argues that, like a plea agreement, TCCC's rules and conditions for home detention constituted a binding contract with the State; he relied upon that contract; and equity requires enforcement of the rules and conditions.

A basic principle of American jurisprudence is "that a person accused of a crime is presumed innocent until proven guilty beyond a reasonable doubt." *Overstreet v. State,* 877 N.E.2d 144, 160 (Ind.2007), *reh'g denied.* Given the facts, we cannot say that TCCC's initial rules and conditions applied to Kilgore when he violated his home detention *after* being convicted of a felony and sentenced thereon. Here, Kilgore agreed to TCCC's rules and conditions when the trial court placed him "on [h]ouse [a]rrest as a condition of pre-trial release" under Cause No. 1566, when the presumption of innocence still applied. *Id.* at 130. On July 16, 2008, the trial court entered a conviction against Kilgore under Cause Nos. 1566 and 1991. The trial court then sentenced him to an executed sentence of "five (5) years with [TCCC] at a level to be determined by TCCC [.]" *Id.* Apparently, TCCC assessed Kilgore and placed him for purposes of sentencing in home detention; however, TCCC main-

4. The State filed the habitual offender allega-    tion as Count II.

tained its discretionary authority to change the level of Kilgore's placement.

Subsequently, Kilgore failed to report to TCCC as scheduled, thereby violating his *post-sentence* home detention. We cannot say that TCCC's rules and conditions, which applied to Kilgore during his pretrial release, remained the same once Kilgore was convicted of a felony and began serving his executed sentence in home detention, as permitted by TCCC. *See, e.g., Senn v. State,* 766 N.E.2d 1190, 1202 (Ind. Ct.App.2002) (declining to find that "home detention as a condition of pretrial release 'is upon the same terms' as home detention as a condition of probation"), *reh'g denied.* Thus, we find no violation of Kilgore's due process rights in charging him with escape.

### 2. *Jury Instructions*

■ Kilgore also asserts that the trial court erred in refusing a tendered jury instruction. Whether to give or deny a tendered jury instruction is within the trial court's discretion and is reviewed only for an abuse of that discretion. *Wright v. State,* 766 N.E.2d 1223, 1234 (Ind.Ct.App. 2002). "An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict." *Id.*

Kilgore tendered the following jury instruction:

> The Defendant is charged with Escape. Unauthorized Absence from Home Detention is included in Count I Escape. If the State proves the Defendant guilty of Escape, you need not consider the included crime. However, if the State fails to prove the Defendant committed Escape, you may consider whether the Defendant committed Unauthorized Absence from Home Detention . . . .

The crime of unauthorized absence from home detention is defined by statute as follows:

> An offender who leaves the offender's home without documented permission from the supervising entity commits unauthorized absence from home detention, a Class A misdemeanor.

Before you may convict the Defendant, the State must have proved each of the following:

1. The defendant . . .
2. left his home
3. without documented permission
4. from the supervising entity.

(App.131–32).

When a party asks a trial court to instruct the jury on an alleged lesser-included offense of the crime charged, the court must conduct a three-part analysis to determine whether the instruction is appropriate. In the first step, the court must compare the statute defining the crime charged and the statute defining the alleged lesser-included offense. If the alleged lesser-included offense may be established by proof of all of the same or proof of less than all of the same material elements to the crime, or if the only difference between the two statutes is that the alleged lesser-included offense requires proof of a lesser culpability, then the alleged lesser-included offense is inherently included in the crime charged.

In the second step, if the trial court determines that the alleged lesser-included offense is not inherently included in the charged crime, it must compare the statute defining the alleged lesser-included offense with the charging instrument in the case. If all of the elements of the alleged lesser-included offense are covered by the allegations in the charging instrument, then the al-

leged lesser-included offense is factually included in the charged crime.

If the trial court has determined that the alleged lesser-included offense is either inherently or factually included in the charged crime, then it must proceed to the third step. In the third step, the trial court must examine the evidence presented by each party and determine whether there is a serious evidentiary dispute over the element or elements that distinguish the crime charged and the lesser-included offense. If it would be possible for a jury to find that the lesser, but not the greater, offense had been committed, then the trial court must instruct the jury on both offenses.

*Watts v. State*, 885 N.E.2d 1228, 1231–32 (Ind.2008) (internal citations omitted).

Indiana Code section 35–38–2.5–13 provides, in relevant part, that an offender commits unauthorized absence from home detention by "leav[ing] the offender's home ... without documented permission from the supervising entity [.]" Indiana Code section 35–44–3–5 provides that a "person who knowingly or intentionally violates a home detention order ... commits escape, a Class D felony."

Unauthorized absence from home detention contains materially different elements from escape; namely, the State merely must prove that an offender left his or her home without documented permission from his or her supervising entity, i.e., TCCC. An offender is defined as someone who has been convicted of a crime. *See* I.C. §§ 35–38–2.5–4; 11–8–1–9.

To convict a person of escape, however, the State must prove that a person *knowingly or intentionally* violated a home detention order. Thus, unauthorized absence from home detention is not inherently included in the offense of escape.

Furthermore, unauthorized absence from home detention is not factually included in the charging information, which alleged that Kilgore "knowingly or intentionally violate[d] a home detention order." (App.6). The charging information did not allege, and thus the State was not required to prove, that Kilgore, after being convicted of a crime, left his home without written permission from TCCC. Accordingly, the trial court did not abuse its discretion in refusing Kilgore's tendered instruction.

Moreover, in determining whether the trial court committed fundamental error in failing to instruct the jury about the offense of unauthorized absence from detention, a panel of this court held that "the offense applies only in cases where the defendant has been placed on home detention as a condition of probation." *Brown v. State*, 894 N.E.2d 598, 600–01 (Ind.Ct. App.2008). In so holding, the court determined that defendants serving executed sentences on home detention are not entitled to an instruction on that offense. *Id.* at 601.

Here, Kilgore "was serving an executed sentence" on home detention when he violated the detention order by leaving his residence and failing to return. (App.130). He therefore was not entitled to an instruction on unauthorized absence from home detention.

3. *Sentence*

■ The State seeks remand to address sentencing errors. Specifically, the State asserts that "the trial court's oral sentencing order differs from its written order"; and the sentence imposed due to Kilgore's habitual offender status is unauthorized by statute because "the trial court entered the habitual offender finding as a separate consecutive sentence instead of ordering enhancement of one of the underlying felonies." State's Br. at 13. The State also

raises the issue of whether the trial court properly suspended the enhanced portion of Kilgore's statute.

We find no inconsistency between the oral and written sentencing statements, where the trial court set forth in both a sentence of five years, with two years executed and three years suspended.

As to suspending the enhanced portion of a sentence, Indiana Code section 35–50–2–2(b)(3) provides that a trial court may suspend that part of the sentence that is in excess of the minimum where

> [t]he crime committed was a Class D felony and less than three (3) years have elapsed between the date the person was discharged from probation, imprisonment, or parole, whichever is later, for a prior unrelated felony conviction and the date the person committed the Class D felony for which the person is being sentenced. However, the court may suspend the minimum sentence for the crime only if the court orders home detention under IC 35–38–1–21 or IC 35–38–2.5–5 instead of the minimum sentence specified for the crime under this chapter.

Therefore, a trial court may, under the appropriate circumstances, suspend habitual offender enhancements. *Bauer v. State*, 875 N.E.2d 744, 748 (Ind.Ct.App. 2007), *trans. denied; contra Howard v. State*, 873 N.E.2d 685, 690 (Ind.Ct.App. 2007) (holding that a sentence enhanced under the habitual offender statute may not be suspended).

Nonetheless, we find that Kilgore's sentence is not authorized by statute. "A habitual offender finding does not constitute a separate crime nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony." *Greer v. State*, 680 N.E.2d 526, 527 (Ind.1997); *see* I.C. § 35–50–2–8 (providing that the sentence imposed upon a finding of habitual offender shall enhance the sentence for the underlying conviction rather than impose a separate penalty).

In this case, the trial court improperly imposed a separate sentence for the habitual offender finding, rather than enhancing Kilgore's felony sentence. Accordingly, we reverse and remand the case to the trial court for re-sentencing in accordance with this opinion.[5]

Affirmed in part, reversed in part, and remanded.

MAY, J., and KIRSCH, J., concur.

---

5. The State maintains that "a class D felony enhanced by Ind.Code § 35–50–2–8, carries a sentencing range of between three and one-half years and eleven years." State's Br. at 14. We disagree. Indiana Code section 35–50–2–8 provides that a trial court "shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense." Indiana Code section 35–50–2–7(a) provides that a "person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 1/2) years."