**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**PAULA M. SAUER**
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES W. HAMILTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A05-1110-CR-599 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-0909-FA-7

**July 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

James W. Hamilton ("Hamilton") appeals the revocation of his probation raising the following issues:

I.     Whether the trial court abused its discretion in revoking Hamilton's probation at a time when, pursuant to the terms of his plea agreement, he had not yet begun to serve his term of probation; and

II.     Whether there was sufficient evidence to revoke Hamilton's probation on the basis that he had committed the crime of bribery.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On September 2, 2009, the State charged Hamilton with two counts of dealing in cocaine or narcotic drug,[1] each as a Class A felony; one count of dealing in a Schedule IV controlled substance,[2] as a Class C felony; two counts of possession of cocaine or narcotic drug,[3] each as a Class C felony; and one count of possession of a Schedule IV controlled substance,[4] as a Class D felony. On May 17, 2011, Hamilton pleaded guilty to one count of dealing in cocaine, a Class B felony, as a lesser included offense of one of the original counts of Class A felony dealing. In exchange, the State agreed to dismiss the remaining five counts. The trial court sentenced Hamilton to 7,300 days (twenty years) at the Indiana Department of Correction, and of that time, 2,162 days "(6 years minus 28 days credit for time served to date)" were ordered to be served on work release.

---

[1] *See* Ind. Code § 35-48-4-1.

[2] *See* Ind. Code § 35-48-4-3.

[3] *See* Ind. Code § 35-48-4-6.

[4] *See* Ind. Code § 35-48-4-7.

*Appellant's Br.* at 2; *Appellant's App.* at 60. The remaining 5,110 days (fourteen years) were suspended, 4010 days (eleven years) of which were to be served on probation. Hamilton signed his "Probation Order" on May 17, 2011, which in pertinent part provided that Hamilton was prohibited from (1) consuming any controlled substance or illegal drug and (2) violating any state or federal law. *Appellant's App.* at 61.

Hamilton began serving his executed sentence at Hendricks County Work Release on May 17, 2011. Around 10:30 p.m. on June 6, 2011, Hamilton, complaining of back pain, asked Hendricks County Work Release correctional officer Annette Dunn ("Officer Dunn") for permission to go to the hospital across the street. *Tr.* at 111-13. Officer Dunn's supervisor authorized a four-hour pass. Hamilton was instructed to call the work release facility when he arrived at the hospital, and "to check in every hour on the hour while he was there." *Id.* at 114.

Hamilton returned to the work release facility later than expected and could not account for all of his time. Pursuant to work release standard operating procedure, Hamilton was required to submit to a urine screen. *Id.* at 120. A short time later, Hamilton begged Officer Dunn, "[C]an we pull this [screen], is there any way this [screen] can be pulled?" *Id.* at 121. Hamilton stated that a "Benjamin would take care of it." *Id.* at 122. While pleading with Officer Dunn, Hamilton placed "a twenty dollar bill with others folded under" on the counter in front of Officer Dunn. *State's Ex.* 6. Officer Dunn ended the conversation without touching the money. *Tr.* at 160. Hamilton's urine screen tested positive for cocaine. *State's Ex.* 13.

On October 4, 2011, the trial court revoked Hamilton's placement in work release

3

after finding that he had possessed or consumed an illegal drug without a prescription. The trial court also revoked his probation in its entirety after finding probable cause to believe that he committed bribery, a new criminal offense, and ordered Hamilton to serve 7,272 days at the Indiana Department of Correction, with credit for time served. *Appellant's App.* at 79. Hamilton now appeals.

## DISCUSSION AND DECISION

A probation revocation hearing is in the nature of a civil proceeding, and the State must prove a violation of the conditions of probation by a preponderance of the evidence. Ind. Code § 35-38-2-3(e). This court reviews a trial court's decision to revoke probation for an abuse of discretion. *Rosa v. State,* 832 N.E.2d 1119, 1121 (Ind. Ct. App. 2005). "'An abuse of discretion occurs if the decision is against the logic and effect of the facts and circumstances before the court.'" *Whatley v. State*, 847 N.E.2d 1007, 1009 (Ind. Ct. App. 2006) (quoting *Rosa,* 832 N.E.2d at 1121).

## I.     Timing of Probation Revocation

Hamilton first contends that, pursuant to his plea agreement, "his probation was to *follow* work release."[5] *Appellant's Br.* at 5 (emphasis added). He argues that because a plea agreement is contractual in nature, the State and the trial court were bound by its terms so that probation could only begin after Hamilton had completed the executed portion of his sentence on work release. *Id.* at 6. Hamilton maintains that the trial court

---

[5] Although Hamilton cites to his CCS, noting the entry that "memorializes the order of the court—that probation was to follow work release," *Appellant's Br.* at 5 (citing *Appellant's App.* at 5), we do not find this language in Hamilton's plea agreement. *Appellant's App.* at 59. We address the merits of Hamilton's contract issue, however, because the State does not contradict Hamilton's interpretation of his plea agreement.

4

abused its discretion when it revoked his probation at a time when, according to the terms of the plea agreement, his probation had not yet started.

Hamilton does not question the general rule that a "defendant's probationary period begins immediately after sentencing" even if his actual probation begins at a later time. *Baker v. State*, 894 N.E.2d 594, 597-98 (Ind. Ct. App. 2008). Instead, he argues that when, as here, the terms of the plea agreement say otherwise, the trial court is bound by those terms. Hamilton contends: "In contrast to all of the cases cited by the State, Hamilton's argument is based on Ind[iana] Code [section] 35-35-3-3(e): once the court accepts a plea agreement, it is strictly bound by its terms and may impose only the sentence required by the plea agreement." *Appellant's Br.* at 9.

Because our court rejected a similar argument in *Kopkey v. State*, 743 N.E.2d 331, 339 (Ind. Ct. App. 2001), *trans. denied*, we are not persuaded by Hamilton's argument. In *Kopkey,* the trial court informed Kopkey "through the sentencing order and otherwise," that his probation would follow completion of his in-home detention. 743 N.E.2d at 339. The trial court revoked Kopkey's probation after finding that he had violated the terms of his in-home detention, which was being served during his probationary period but prior to his actual probation. *Id*. at 334. Recognizing that "[a] defendant's 'probationary period' begins immediately after sentencing, even if his or her actual probation begins at a later date," a panel of this court affirmed the revocation of Kopkey's probation. *Id*. at 339 (citing *Crump v. State*, 740 N.E.2d 564, 567-68 (Ind. Ct. App. 2000), *trans. denied*).

Like Hamilton, Kopkey attempted to distinguish his facts from cases like *Crump*, noting that his "sentencing order expressly stated that probation would begin *after* his

5

release from in-home detention." *Kopkey*, 743 N.E.2d at 339 (emphasis added). This court rejected Kopkey's argument with the following reasoning:

> [W]e do not see that the manner in which Kopkey was informed of his sentence differs in any material respect from the sentencing order issued in *Gardner* [*v. State*, 678 N.E.2d 398 (Ind. Ct. App. 1997)]. There, we affirmed the revocation of the defendant's probation for conduct occurring before he began serving his sentence, even though the trial court stated that the defendant would be "placed on Probation for 270 days *following completion* of the Community Corrections Commitment." *Gardner,* 678 N.E.2d at 399. Merely because a sentencing order states that actual probation will begin after another portion of the sentence is served does not alter the fact that the "probationary period" for revocation purposes begins immediately after sentencing.

*Kopkey*, 743 N.E.2d at 339.

As justification for the revocation of Kopkey's probation, our court further reasoned:

> When a trial court grants a defendant probation in lieu of an executed sentence, the trial court is taking many aspects of the defendant's character into account. When the defendant commits a crime or violates a term of the probation, the trial court should be able to weigh that violation in its reevaluation of whether the defendant should be or should have been granted probation . . . . Once a defendant has been sentenced, the court may revoke or modify probation, upon a proper showing of a violation, at any time before the completion of the probationary period.

*Id*. (quoting *Gardner*, 687 N.E.2d at 401).

*Kopkey* and *Gardner* control here. A defendant's "probationary period" begins immediately after sentencing, even if defendant's plea agreement provides that the actual probation follows an executed sentence. *Kopkey*, 743 N.E.2d at 339; *Gardner,* 678 N.E.2d at 399. Here, Hamilton was sentenced on May 17, 2011. As such, he was in his "probationary period" in June 2011 when he used cocaine and committed the acts that

6

constituted bribery.

Furthermore, although Hamilton claims that it was his understanding that his probation would not be revoked while he served his executed sentence on work release, this argument is undermined by the following colloquy, which took place between the trial court and Hamilton during the sentencing hearing:

Court: . . . Mr. Hamilton, I know we were here before, I rejected this plea before. I met with your attorney and the Chief Deputy Prosecutor earlier this week. Tell me why I should accept this plea agreement[.]

Defendant: Um, your Honor, I'm really just trying to keep my life together. I've got four (4) kids and a really good job right now and uh, just trying to stay on track with my life.

Court: Why is now different than before sir? You have four (4) prior felony convictions, you've never completed probation in your life, you violated every time you've been on.

Defendant: Uh, I've just grown up, uh . . .

Court: You are habitual eligible, anybody else that comes into this courtroom, the State is asking for twenty-five (25) or thirty (30) years. I understand this is a twenty (20) year plea, but, you are getting a gift.

Defendant: Yes, I am.

Court: Why should I approve it?

Defendant: Um, like I said, I just, I believe I can get through this program and work with . . .

Court: (Interposing) I don't. That is the only reason I'm going to take this plea agreement. I don't believe in one iota that you are going to be able to complete six (6) years at the Work Release Facility without screwing up. Because, I'm looking at your pre-sentence report and that is all I see are messes up every time. You can't follow rules. There is going to be

> more rules on you at the Work Release Facility and then if you make it through that, fourteen (14) years of probation.

Defendant: I understand.

Court: Every time I look through here you violated every, single time as I recall that you've been on some type of supervised release. Correct me if I'm wrong, in my mind you should just be given a twenty (20) year hit at the Department of Corrections.[sic] I don't like putting drug dealers in the Work Release Facility to begin with. This is a zero (0) tolerance plea, you are doing every day of your back-up time. . . . . This is three (3) hand to hand buys and you are going to the Work Release Facility. If you have a notion that you are going to bring any illegal substance into that facility and start doing anything stupid there, you might as well get rid of that now and let's just get it over with and send you to prison today, because it ain't going to happen.

Defendant: It's not going to happen sir.

*Tr*. at 66-69.

Notwithstanding the terms in Hamilton's plea agreement, we find the trial court's decision to revoke Hamilton's probation is not against the logic and effect of the facts and circumstances before the court. *Whatley*, 847 N.E.2d at 1009. The trial court did not abuse its discretion in revoking Hamilton's probation for a violation that occurred within his term of work release.

## II. Sufficiency of Evidence to Revoke Probation

Hamilton next contends that the evidence was insufficient to revoke his probation based on the commission of the crime of bribery. Specifically, Hamilton argues that the State failed to prove that Officer Dunn was a "public servant," as required for a bribery conviction.

8

The decision to revoke probation is within the sole discretion of the trial court. *Reyes v. State,* 868 N.E.2d 438, 440 (Ind. 2007). And its decision is reviewed on appeal for abuse of that discretion. *Prewitt v. State,* 878 N.E.2d 184, 188 (Ind. 2007). On review, we consider only the evidence most favorable to the judgment without reweighing that evidence or judging the credibility of the witnesses. *Braxton v. State,* 651 N.E.2d 268, 270 (Ind. 1995). "If there is substantial evidence of probative value to support the trial court's decision that a defendant has violated any terms of probation, the reviewing court will affirm its decision to revoke probation. *Woods v. State*, 892 N.E.2d 637, 639-40 (Ind. 2008).

As a condition of probation, Hamilton was prohibited from (1) consuming any controlled substance or illegal drug and (2) violating any state or federal law. *Appellant's App.* at 61. On June 10, 2011, the Hendricks County Work Release filed a notice with the trial court requesting that Hamilton be removed from work release and remanded to the Hendricks County Jail for the reason that he had consumed cocaine. Finding that the use of cocaine was a probation violation, the trial court remanded Hamilton to the Hendricks County Sheriff on July 12, 2011.

On June 21, 2011, the Hendricks County Probation Department requested that Hamilton's probation be revoked because he had "violated a State law, to wit: Bribery, Class C felony." *Appellant's App.* at 68. Following a hearing, the trial court revoked Hamilton's probation finding by a preponderance of the evidence that Hamilton had committed bribery. *Tr.* at 325. On appeal, Hamilton contends that there was insufficient evidence that Officer Dunn was a "public servant," as required to prove the bribery.

9

We begin by noting that the State need not show that a defendant was convicted of a crime in order for the trial court to revoke probation. *Lightcap v. State*, 863 N.E.2d 907, 911 (Ind. Ct. App. 2007). "Although an arrest standing alone does not necessarily support a revocation of probation, where there is evidence submitted at the hearing from which the trial court could find that an arrest was reasonable and that there is probable cause for belief that the defendant violated a criminal law, revocation of probation is permitted." *Id.* To find probable cause to believe that Hamilton committed bribery, the State had to present evidence that Hamilton offered a "public servant" property, e.g., cash, with the intent to control the performance of an act related to the employment or function of that public servant. Here, the public servant in question is Officer Dunn and the act in question is her responsibility for taking Hamilton's urine screen.

At the revocation hearing, the following colloquy took place between the State and Officer Dunn:

Q. Uh, Miss Dunn, in what capacity are you employed?

A. I'm a correctional officer at Hendricks County Work Release.

Q. Okay. Are you considered a public servant?

A. Yes ma'am.

Q. Uh, are you, who pays you?

A. The county does.

*Tr.* at 111-12. Dunn testified that Hamilton attempted to persuade Officer Dunn to "get the [urine] drop pulled." *Id.* at 121.

Q. Do you know what statements [Hamilton] made at that time?

10

A.	You know that the drop can be pulled. That uh, the Benjamin would take care of it. . . .

Officer Dunn testified that this occurred when she was in her "official capacity . . . [a]s a guard for the work release center." *Id*. at 123. Officer Dunn then testified that she wrote up a report of what occurred. *Id*. The probable cause affidavit provided the following account:

> After providing the urine sample, Mr. Hamilton began behaving nervously and asked Officer Annette Dunn what the impact would be of a positive urine screen and if there was any way he could avoid getting into trouble. Mr. Hamilton then slid a twenty dollar bill across the control room window (remaining on the countertop) to Officer Annette Dunn and stated that if something could be worked out, there would be a Benjamin (additional money) in it for her. Officer Annette Dunn declined the money and told Mr. Hamilton that the urinalysis test would be turned in for testing. Throughout the night, [Hamilton] continued to ask about different ways to make the urinalysis disappear.

*State's Ex*. 2.

Here, Officer Dunn's testimony was that she was a "public servant" who was paid by the county and that Hamilton asked her to make his urine test go away by offering her money. This evidence was sufficient to allow the trial court to find probable cause to believe that Hamilton committed bribery, which is a violation of state law. The trial court did not abuse its discretion in revoking Hamilton's probation.

Affirmed.

BAKER, J., and BROWN, J., concur.