Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 03 2014, 10:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DANIEL DIXON**
Lawrence County Public Defender Agency
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KRISTEN SHANE LESTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1402-CR-95 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAWRENCE SUPERIOR COURT I
The Honorable Michael A. Robbins, Judge
Cause Nos. 47D01-1011-FD-1378, 47D01-1012-FD-1408, 47D01-1101-FD-60

**September 3, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Kristen Lester ("Lester") appeals the order of the Lawrence Superior Court revoking Lester's direct placement in community corrections and placing him in the custody of the Indiana Department of Correction ("DOC"). On appeal, Lester claims that the trial court was without jurisdiction and authority to modify his placement in community corrections.

We affirm.

**Facts and Procedural History**

On December 12, 2011, Lester entered into plea agreements in three causes: Cause No. 47D01-1011-FD-1378 ("Cause No. FD-1378"), Cause No. 47D01-1012-FD-1408 ("Cause No. FD-1408"), and Cause No. 47D01-1101-FD-60 ("Cause No. FD-60"). In these agreements, Lester pleaded guilty to Class D felony theft, Class D felony receiving stolen property, and Class D felony operating a vehicle while a habitual traffic violator. Lester also admitted to being an habitual offender. The trial court accepted Lester's pleas, and that same day, sentenced Lester pursuant to the plea agreement as follows: in Cause No. FD-1387, an executed sentence of one and one-half years for theft, enhanced by three years as a result of the habitual offender adjudication; in Cause No. FD-1408, an executed sentence of one and one-half years, to be served consecutively to the sentence in Cause No. FD-1378;[1] and in Cause No. FD-60, an executed sentence of one and one-half years, to be served consecutively to the sentences in the other two causes. Pursuant to the terms of the plea agreement, Lester was ordered to serve his sentences "executed" in

---

[1] In Cause No. FD-1408, Lester's driver's license was also suspended for life.

direct placement at the Wabash Valley Community Corrections Male Work Release Center. See Appellant's App. pp. 25, 29, 30, 35, 37, 42.

On December 31, 2012, Lester violated the terms of his placement by leaving the Wabash Valley Community Corrections Male Work Release Center and not returning. On October 11, 2013, the State filed a motion requesting that the trial court revoke Lester's direct placement in community corrections and order him to serve the remainder of his sentence in the DOC. Lester responded on December 4, 2013, by filing a motion to dismiss the State's motion to revoke, claiming that the trial court lacked jurisdiction to revoke Lester's placement. The trial court held a hearing on the matter on December 18, 2013, and the following day entered an order denying Lester's motion to dismiss.

At a revocation hearing held on January 22, 2014, the trial court found that the State had met its burden of proving that Lester had violated the terms of his direct placement in community corrections. At a dispositional hearing held on January 29, 2014, the trial court ordered Lester to serve the remainder of his sentence at the DOC.[2] Lester now appeals.

**Standard of Review**

We have explained before that:

> [f]or purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. The similarities between the two dictate this approach. Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. A defendant is not entitled to serve a

---

[2] Lester had 790.5 days remaining on his sentence in Cause No. FD-1378 and 67.5 days left on his sentence in Cause No. FD-60. Lester had completed his sentence in Cause No. FD-1408.

> sentence in either probation or a community corrections program. Rather, placement in either is a matter of grace and a conditional liberty that is a favor, not a right.
>
> * * *
>
> Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence. We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation.

Monroe v. State, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009) (citations and internal quotations omitted). Here, the parties also contest the applicability of certain statutes. The interpretation of statutes is a pure question of law that we review *de novo*. Pittman v. State, 9 N.E.3d 179, 183 (Ind. Ct. App. 2014).

## Discussion and Decision

Lester claims that the trial court lacked jurisdiction and authority to alter his placement in community corrections. A defendant may be placed in community corrections as a condition of probation or as a direct placement. See Shaffer v. State, 755 N.E.2d 1193, 1194-95 (Ind. Ct. App. 2001) (Vaidik, J., concurring). Here, Lester was placed in community corrections as a direct placement, not as a condition of probation. Such direct placement into community corrections is governed by Indiana Code chapter 35-38-2.6.[3] This chapter applies to defendants convicted of a felony whenever any part

---

[3] We refer to the version of the statutes in effect at the time of Lester's sentence and the revocation hearing.

of the sentence may not be suspended under Indiana Code sections 35-50-2-2[4] or 35-50-2-2.1.[5]  Here, except as provided in Chapter 2.6, the trial court could *not* suspend any portion of the sentences for Lester's Class D felony convictions that was in excess of the minimum sentence for a Class D felony because Lester had been convicted of other felonies and been on probation within the past three years.  See I.C. § 35-50-2-2(b)(3) (2013).[6]

Pursuant to Indiana Code section 35-38-2.6-3(a) (2013), the trial court can: "at the time of sentencing, suspend the sentence and order a person to be placed in a community corrections program as an alternative to commitment to the department of correction.  The court may impose reasonable terms on the placement."[7]  And, under Indiana Code section 35-38-2.6-4 (2013), "[i]f the court places a person in a community corrections program under this chapter, the court *shall* suspend the sentence for a fixed period to end

---

[4]  This section provides limits on when a trial court can suspend a sentence for a felony.  Relevant here is the provision which provides that a trial court can suspend only that portion of a sentence for a Class D felony that was in excess of the minimum sentence if "less than three (3) years have elapsed between the date the person was discharged from probation, imprisonment, or parole, whichever is later, for a prior unrelated felony conviction and the date the person committed the Class D felony for which the person is being sentenced."  Ind. Code § 35-50-2-2(b)(3) (2013).

[5]  This section provides limits on when a trial court can suspend a sentence for a person convicted of a felony who also had a juvenile record consisting of acts that would have been certain felonies had they been committed by an adult.  Ind. Code § 35-50-2-2.1 (2013).

[6]  The State cites Reffett v. State, 844 N.E.2d 1072, 1074 (Ind. Ct. App. 2006), for the proposition that no part of a habitual offender enhancement can be suspended.  See also Howard v. State, 873 N.E.2d 685, 690-91 (Ind. Ct. App. 2007) (following Reffett).  We note, however, that other cases from this court have disagreed with Reffett and since held that a trial court may suspend habitual offender and habitual substance offender enhancements, subject to the general, statutory non-suspension rules.  See Kilgore v. State, 922 N.E.2d 114, 120 (Ind. Ct. App. 2010); Bauer v. State, 875 N.E.2d 744, 749 (Ind. Ct. App. 2007).

[7]  Such placement is also subject to availability of residential beds or home detention units and also subject to the community corrections program receiving a pre-sentence investigation report from the probation agency.  See I.C. § 35-38-2.6-3(b), (d).

not later than the date the suspended sentence expires." (emphasis added). Particularly relevant to the present case, Section 5 of this chapter stated:

> If a person who is placed under this chapter violates the terms of the placement, the court may, after a hearing, do any of the following:
> (1) Change the terms of the placement.
> (2) Continue the placement.
> (3) Revoke the placement and commit the person to the department of correction for the remainder of the person's sentence.

I.C. § 35-38-2.6-5 (2013).

Here, Lester does not deny the allegations that he failed to return to the community corrections program and thereby violated the terms of his placement. This case would therefore seem to call for a straight-forward application of Section 5, under which the trial court was well within its discretion to revoke Lester's placement and commit him to the DOC.

Lester, however, claims that Section 5, and indeed, all of Chapter 2.6, is inapplicable to him because the trial court ordered that he serve his sentence "executed" in community corrections as opposed to "suspended" in community corrections. More specifically, Lester claims that all of Chapter 2.6 is applicable only to those who have been placed in direct placement in community corrections *and* have had their sentences "suspended." Here, however, both the plea agreements and the trial court's sentencing orders stated that Lester was to serve his sentences "executed" in community corrections. See Appellant's App. pp. 25, 29, 30, 35, 37, 42. For the reasons explained below, we disagree with Lester.

6

This court has recognized before that the traditional "bright line between suspended-sentence punishments and executed-sentence punishments has been blurred by the implementation of . . . new[er] alternative programs." Gardner v. State, 678 N.E.2d 398, 401 (Ind. Ct. App. 1997). In particular, "[t]he community corrections program presents a hybrid between conditions of probation for a suspended sentence and executed sentence punishments." Tubbs v. State, 888 N.E.2d 814, 816 (Ind. Ct. App. 2008) see also Gardner, 678 N.E.2d at 401 ("With the community corrections programs . . . we have a hybrid punishment involving a suspended sentence which may be revoked, yet requires the defendant receive credit for time served.").

Thus, the fact that the plea agreements and sentencing orders stated that Lester was to serve his sentences "executed" in community corrections is not dispositive, because community corrections is somewhere in between a traditional "executed" sentence in the DOC and a traditional "suspended" sentence subject to the terms of probation. Indeed, with regard to the community corrections statutes, our supreme court has held that "the legislature's reference to a 'suspended sentence' . . . means that any requirement that the offender actually serve time incarcerated through the Department of Correction (commonly referred to as "executed time") is suspended during the community corrections placement period." Purcell v. State, 721 N.E.2d 220, 223 (Ind. 1999). Thus, by ordering Lester to serve his sentences in community corrections, the trial court necessarily "suspended" the requirement that he serve the non-suspendible portions

of his sentences in the DOC. The reference in the plea agreements and sentencing orders to Lester serving his sentences "executed" does not alter this.[8]

We therefore conclude that Lester's placement in community corrections was subject to Indiana Code chapter 35-38-2.6, and more specifically Indiana Code section 35-38-2.6-5, which clearly authorizes the trial court to revoke Lester's placement in community corrections and order him to serve the remainder of his sentences in the DOC.

Lester's argument that the plea agreement requires that he serve all of his time in community corrections is accordingly unavailing. There is no authority outside the statutory framework that would allow the trial court to sentence Lester to some sort of non-statutory placement in community corrections that is not subject to revocation. Nor do we think that allowing the trial court to revoke Lester's placement in community corrections is a violation of the terms of his plea agreement. By agreeing to be placed in community corrections, Lester necessarily agreed to be subject to revocation of such placement.[9]

**Conclusion**

The trial court did not lack jurisdiction or authority to revoke Lester's direct placement in community corrections. By placing Lester in community corrections, the trial court necessarily suspended that portion of the Lester's sentences that could not be otherwise suspended. The statute granting the trial court the authority to sentence Lester

---

[8] The references to Lester serving his sentence "executed" in community corrections should instead be understood to refer to the fact that, unlike probation, a defendant serving a sentence in community corrections earns credit for the time served. See Gardner, 678 N.E.2d at 401.

[9] Indeed, defendants often enter into plea agreements wherein they will be placed on probation, yet it is understood that such probation may be revoked if they fail to abide by the terms of probation.

8

to direct placement in community corrections also provides that the trial court may revoke the placement if the defendant violates the terms of his placement. Therefore, the trial court did not err in denying Lester's motion to dismiss the State's petition to revoke Lester's placement in community corrections, nor did the trial court abuse its discretion in revoking Lester's placement in community corrections after Lester left and failed to return to community corrections. We therefore affirm the judgment of the trial court.

Affirmed.

RILEY, J., and CRONE, J., concur.